Hon. Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RON LITTMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br>MUTUAL OF OMAHA INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | Case No. 3:26-cv-5538-TMC<br><br>AETNA HEALTH AND LIFE INSURANCE COMPANY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE 12(b)(2)<br><br>**NOTE ON MOTION CALENDAR: July 29, 2026** |

**INTRODUCTION**

Plaintiff's Complaint, while consisting of more than *200* paragraphs, omits any factual support connecting Aetna Health and Life Insurance Company ("AHLIC") to the claims at issue. Plaintiff brings a variety of state and federal telemarketing claims all predicated on his alleged receipt of telephone calls from *unnamed* third parties. Plaintiff then brings AHLIC into this suit on the bases that (i) the name "Aetna" was allegedly uttered (along with others) during some of the calls at issue and (ii) Plaintiff purchased from unnamed third parties two policies



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

that he claims (without explanation) are issued by AHLIC. This is all. Plaintiff alleges no calls by AHLIC directed to the State of Washington and no basis for agency liability.

Plaintiff's Complaint consists of a fundamental, threshold problem. Plaintiff cannot allege any basis for personal jurisdiction over AHLIC in this forum. Concerning general jurisdiction, Plaintiff has not, and cannot, allege AHLIC is "essentially at home" in the State of Washington. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). AHLIC is neither incorporated in, nor based in Washington. AHLIC has no employees in Washington. Plaintiff does not (and cannot) allege AHLIC has the "constant and pervasive" contacts required such that Washington is functionally another principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

Concerning specific jurisdiction, Plaintiffs fail to allege any intentional "suit-related conduct [that] create[s] a substantial connection with" the State of Washington. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). Plaintiff fails to allege that AHLIC expressly aimed any action into Washington, much less that Plaintiff's claims stem from forum-related activities. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Even if Plaintiff happened to be in this District when he received one or more of the calls at issue, Plaintiff fails to allege any facts to plausibly suggest that AHLIC placed, or is responsible for, the calls at issue. Plaintiff cannot contend that merely because an unnamed third party used the name "Aetna," AHLIC is subject to specific jurisdiction in Washington. Nor does Plaintiff's alleged purchase of multiple policies somehow establish specific jurisdiction for phone calls made by unnamed third parties. Indeed, the policies Plaintiff identifies *are not* AHLIC policies.

In light of Plaintiff's failure to make any relevant jurisdictional allegations, this case should be dismissed for lack of personal jurisdiction.

## BACKGROUND

### I. PLAINTIFF'S ALLEGATIONS



WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Plaintiff initiated this case by serving it, without filing, in April of 2026. This action was thereafter removed on May 26, 2026. (Dkt. 1.)

Plaintiff's Complaint runs more than 200 allegations and asserts 12 claims for relief. Plaintiff's Complaint, however, is simple. Plaintiff contends that, beginning in 2025, he received a series of calls from unidentified third parties with generic names selling final expense insurance. (Dkt. 1-1 ¶¶ 26-30.) Plaintiff contends the callers claimed to be entities such as "U.S. Funeral Expenses," "American Benefits," "Healthcare Benefits," "Senior Solutions," etc. (*Id.* ¶ 30.) Plaintiff contends the callers "used the same calling script," though he provides no call content. (*Id.* ¶ 30.) Plaintiff concludes each call was "from [co-defendant] Mutual of Omaha or Aetna, or an agent acting on behalf of Mutual of Omaha or Aetna . . . ." (*Id.* ¶ 33.)

Plaintiff then proceeds to provide a chart of calls dating from August 11, 2025 through February 20, 2026. (*Id.* ¶ 34.) Plaintiff provides scant factual detail of these calls, generally omitting any substantive allegation of the call contents, but rather appears to contend simply that AHLIC (or co-defendant Mutual of Omaha) is responsible for the calls at issue because the callers attempted to "sell their insurance." (*Id.*) Plaintiff claims that he tried to call back certain of the callers and "did not reach Mutual of Omaha or AHLIC or any of their agents." (*Id.* ¶ 38.) Rather, Plaintiff alleges that "[c]alls to the calling numbers most often reached disconnected phone lines or people or businesses obviously not involved in insurance sales." (*Id.* ¶ 39.) Plaintiff also concedes that the various business names identified on the calls were not the business names of AHLIC. (*Id.* ¶¶ 44-49.)

Plaintiff further alleges that he purchased two policies he claims are AHLIC policies—one during a call on September 25, 2025 and one during a call on October 28, 2025. (*Id.* ¶¶ 50, 54.) Plaintiff does not allege anything about *who* sold Plaintiff the policies or any details about the underlying calls suggesting AHLIC was involved. Plaintiff does not allege he ever spoke with someone working for or affiliated with AHLIC. Plaintiff does not allege why he believes



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

the policies were issued by or are connected to AHLIC. Indeed, Plaintiff provides no information whatsoever with respect to the alleged entities placing the outreach at issue.

Plaintiff does not endeavor to sue any alleged entity making the calls at issue. Plaintiff instead seeks only to pursue claims against AHLIC and Mutual of Omaha, and brings ***12 claims*** on behalf of ***9 classes***. Plaintiff brings five claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., four claims under RCW § 80.36.390, one claim under RCW 80.36.400(2), one claim under the Washington Consumer Protection Act and one claim for injunctive relief. Each of Plaintiff's claims pertain exclusively to the alleged receipt of telephonic outreach.

## II. AHLIC DOES NOT PLACE OR FACILITATE THE CALLS AT ISSUE.

AHLIC does not place or facilitate the calls at issue. AHLIC does not do business as any of the entities identified in the Complaint: "U.S. Funeral Expenses," "American Benefits," "Infinity Health Clinic," "Healthcare Benefits," "Senior Solutions," "American United Health," or "Senior Financial Solutions." (*See* Declaration of Lori Rodman [Rodman Decl.] ¶ 4.) AHLIC does not use the outbound numbers identified in Plaintiff's Complaint. (*Id.* ¶ 5.)

AHLIC does not sell life insurance products. (*Id.* ¶ 6.) AHLIC does not control the manner and means in which independent insurance agents contact consumers, and does not direct such persons to make outbound calls.. (*Id.*) AHLIC has no record of telephonic outreach to Plaintiff, did not have knowledge of any outreach to Plaintiff and did not direct any outreach to Plaintiff. (*Id.* ¶ 7.) Plaintiff alleges the purchase of two policies, each beginning #ACC. AHLIC *does not* issue policies that begin with #ACC. (*Id.* ¶ 9.)

AHLIC is a Connecticut corporation headquartered in Connecticut. (*Id.* ¶ 10.) AHLIC does not have any offices in Washington. (*Id.*) AHLIC also does not employ any staff engaged in telemarketing. (*Id.* ¶ 11.)

///



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

///

///

## DISCUSSION

### I. LEGAL STANDARD

This Court must look to Washington's long arm statute in assessing personal jurisdiction. *See Mavrix Photo*, 647 F.3d at 1223 ("Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits."); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Washington authorizes personal jurisdiction co-extensive with federal due process. *See Amazon.Com, Inc. v. Kalaydjian*, No. C00-1740R, 2001 WL 491752, at *2 (W.D. Wash. Feb. 21, 2001), *opinion corrected*, 2001 WL 1892190 (W.D. Wash. Mar. 27, 2001). Accordingly, the jurisdictional analysis essentially collapses into a single inquiry of whether the exercise of jurisdiction comports with due process. *See Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994); *Gordon v. Ascentive, LLC*, No. CV-05-5079-FVS, 2005 WL 3448025, at *2 (E.D. Wash. Dec. 15, 2005).

Two types of personal jurisdiction are recognized under the due process clause—general jurisdiction and specific jurisdiction. *See, e.g.*, *Ranza*, 793 F.3d at 1068. Plaintiff has the burden to establish personal jurisdiction; "[w]here a defendant challenges the sufficiency of personal jurisdiction, the plaintiff must bear the burden of establishing that the court does have jurisdiction." *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984). Importantly, where contrary evidence has been submitted, "mere allegations" are insufficient. *See Caballeros, Inc. v. Centruro, S.A.P.I. DE C.V.*, No. 2:21-CV-08442, 2024 WL 4113527, at *5 (C.D. Cal. Sept. 4, 2024) (quoting *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)

### II. AHLIC IS NOT ESSENTIALLY AT HOME IN WASHINGTON.

Plaintiff does not specify whether he is alleging general or specific jurisdiction. (*See* Dkt. 1-1 ¶¶ 15, 19.) Out of an abundance of caution, AHLIC will analyze general jurisdiction.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

As the Ninth Circuit put it, "[t]he standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Mavrix Photo*, 647 F.3d at 1224 (internal quotations and citation omitted); *see also Yolo Med., Inc. v. Lila Enter., LLC*, No. CV 14-06537-AB, 2014 WL 12558314, at *2 (C.D. Cal. Nov. 21, 2014) ("However, general jurisdiction presents a high bar."); *Fortress Secure Sols., LLC v. AlarmSIM, LLC*, No. 4:17-CV-5058-TOR, 2017 WL 11495260, at *3 (E.D. Wash. Nov. 29, 2017) ("Plaintiff concedes that the Supreme Court established a high bar for the quantity of contacts to arise to the level of continuous and systematic."). Simple "continuous and systematic" contacts are insufficient. *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). Rather, general jurisdiction is only available where the party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919; *see also Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*, No. C22-0296-JCC, 2023 WL 122264, at *1 n.2 (W.D. Wash. Jan. 6, 2023); *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1242 (W.D. Wash. 2016).

The Supreme Court and the Ninth Circuit have refused to find general jurisdiction except in forums that act as the defendant's home, *i.e.*, the place of incorporation and the principal place of business. *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1224 (noting that the Supreme Court has found general jurisdiction over a non-resident defendant in only one case). To that end, "outside a corporation's place of incorporation or principal place of business [general jurisdiction] is rarely satisfied." *Amiri v. DynCorp Int'l, Inc.*, No. 14-cv-03333 SC, 2015 WL 166910, at *2 (N.D. Cal. Jan. 13, 2015); *Project Stewart LLC v. JPMorgan Chase Bank, N.A.*, No. 2:21-CV-00381-RAJ, 2022 WL 971478, at *3 (W.D. Wash. Mar. 31, 2022) (finding no general jurisdiction despite the defendant's myriad offices, employees and customers in Washington). Indeed, as the Supreme Court phrased it, "essentially at home" means that



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

contacts must be such that the entity is acting "comparable to a domestic enterprise in that State." *Daimler AG*, 571 U.S. at 133 n.11; *see also id.* at 761 (finding no general jurisdiction over Daimler—a German company—despite sizable sales of a subsidiary in California); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) (noting that "the paradigm forum for the exercise of general jurisdiction" for a corporation is a place equivalent to an individual's domicile) (internal quotations and citation omitted); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (noting Ford subject to general jurisdiction in Delaware and Michigan).

Plaintiff does not provide any basis for general jurisdiction. AHLIC is a Connecticut corporation with its principal place of business in Connecticut. (Rodman Decl. ¶ 10.) Plaintiff thus cannot assert general jurisdiction using the "paradigmatic locations where general jurisdiction is appropriate over a corporation . . . ." *Ranza*, 793 F.3d at 1069; *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) ("LGC and LGCA are not at home in Hawaii, and the district court of Hawaii cannot exercise general personal jurisdiction over them.").

Plaintiff would have to be able to allege facts to support that "that this is the kind of 'exceptional case' in which Defendants' operations in [Washington] are so substantial and of such a nature as to render [Defendants] at home in [Washington]." *Amiri*, 2015 WL 166910, at *3 (internal quotations and citation omitted, emphasis added). Even assuming Plaintiff intended to assert general jurisdiction, Plaintiff comes nowhere close to meeting this "exacting standard." *Ranza*, 793 F.3d at 1069. At best, Plaintiffs alleges that AHLIC "regularly solicits business from Washington State residents and does substantial business in Washington State." (Dkt. 1-1 ¶ 15.) By no means does this conclusory allegation suggest that AHLIC is "essentially at home" in Washington. *See nexTUNE, Inc. v. McKinney*, No. C12-1974 TSZ, 2013 WL 2338260, at *2 (W.D. Wash. May 29, 2013) ("However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

true.") (internal quotations and citation omitted). Even if this contention was accepted as true, it would not suffice. The Supreme Court in *Daimler* specifically referred to such a doing-business-test as "unacceptably grasping" and made clear:

> [T]he general jurisdiction inquiry does not focu[s] solely on the magnitude of the defendant's in-state contacts. . . . General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.

*Daimler*, 571 U.S. at 139, 139 n.20.

Plaintiff makes no allegation attempting to meet the "essentially at home" threshold. Finding general jurisdiction over a non-resident defendant is rare. *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1224 ("The Supreme Court has found general personal jurisdiction over a non-resident defendant in only one case" and citing to the case of *Perkins v. Benguet Consolidated Mining*, which involved an effective relocation of a company during World War II); *see also Amiri*, 2015 WL 166910, at *3 (noting that Perkins sets a "very high" bar to general jurisdiction in a non-resident forum); *Bluhm v. Wyndham Destinations Inc.*, No. C18-5813 BHS, 2019 WL 6213141, at *3 (W.D. Wash. Nov. 21, 2019). Plaintiff neither attempts to, nor plausibly could, meet this standard. Indeed, AHLIC has no offices in Washington. (Rodman Decl. ¶ 10.)

Plaintiff cannot, and does not, allege facts to support that AHLIC is "essentially at home" in the State of Washington. Plaintiff thus cannot satisfy general jurisdiction.

## III. PLAINTIFF FAILS TO MAKE A PRIMA FACIE SHOWING OF SPECIFIC JURISDICTION.

### A. The Specific Jurisdiction Analysis

Specific jurisdiction exists where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also id*. at 1125



WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

("The proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way."). Not just any contacts will do; the "connection between the forum and the specific claims at issue" is what is needed to find specific jurisdiction. *Bristol-Myers Squibb*, 582 U.S. at 265. And "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id.*

The Ninth Circuit uses a three-factor test for assessing specific jurisdiction:

> The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo*, 647 F.3d at 1227–28 (internal citation omitted).

In claims sounding in tort, courts in this Circuit had historically turned to the "purposeful direction" analysis. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. Nov. 1, 2017); *Schwarzenegger*, 374 F.3d at 802. More recently, the Ninth Circuit has suggested that both of its specific jurisdiction analyses—the purposeful direction analysis and purposeful availment analysis—should be considered. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

**B. Only Suit-Related Conduct Is Relevant.**

It bears repeating at the outset of this analysis that it is only AHLIC's "suit-related" conduct that is pertinent here. *See Walden*, 571 U.S. at 284. The case at issue relates exclusively to telephone calls, not the issuance of insurance policies or issues stemming therefrom. *See, e.g., Ranza*, 793 F.3d at 1069. To the extent Plaintiff seeks to use the issuance of insurance policies as germane to his agency theory, AHLIC evaluates that misguided contention below.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

**C. Plaintiff Cannot Satisfy the Purposeful Direction or Availment Tests.**

Specific personal jurisdiction in the tort context is traditionally analyzed under the purposeful direction test. *See, e.g., Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*, No. C10-380TSZ, 2011 WL 830724, at *2 (W.D. Wash. Mar. 1, 2011). The purposeful direction analysis hinges on three factors from the so-called "effects test" taken from the Supreme Court's *Calder v. Jones* opinion:

> [T]he "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Blue Nile, Inc.*, 2011 WL 830724, at *2 (setting forth the purposeful direction factors). Purposeful availment, in turn, "exists when a defendant's dealings with a state establishes a 'quid pro quo'—where the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and in return submits to the burdens of litigation in the State." *Davis*, 71 F.4th at 1163. Plaintiff meets neither test here.

Plaintiff has not alleged here that AHLIC engaged in any case-relevant intentional act at all, much less one aimed at the forum state. Nor has Plaintiff alleged that AHLIC purposefully availed itself in any case-relevant sense of the privilege of conducting business in the State of Washington. Plaintiff concedes that AHLIC did not place any of the calls at issue, alleging that the calls came from telemarketers using fake names. (Dkt. 1-1 ¶ 31; *see also id.* ¶ 34 [alleging calls *on behalf* of AHLIC].) Plaintiff makes clear that his theory as to AHLIC is exclusively one of vicarious liability—that is, AHLIC is purportedly liable for the calls placed by unnamed third parties. Plaintiff alleges specifically a theory of ratification, claiming that he informed AHLIC "about the illegal calls, including the policy numbers," and AHLIC "did not voluntarily



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

disgorge [itself] of the profits." (*Id.* ¶ 69.) To the extent Plaintiff is attempting to leverage an agency theory of personal jurisdiction, Plaintiff's theory fails for three reasons.[1]

***i. Plaintiff fails to allege support for any agency relationship.***

First, and by way of example, courts have interpreted the TCPA to allow for theories of vicarious liability such as actual authority, apparent authority and ratification. *See, e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018); *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014).[2] In the TCPA context, Plaintiff must allege facts to plausibly suggest that AHLIC could not only control the unnamed agent(s), but could control the "manner and means" of the calls at issue. *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014); *see also Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019) ("To establish vicarious liability for a TCPA violation, a plaintiff must allege facts to show that the defendant controlled the 'manner and means' of the call."). Plaintiff has not alleged any facts to establish an agency relationship between AHLIC and any third party.

In order to establish personal jurisdiction over AHLIC based on the conduct of unnamed third parties, "plaintiff must put forth evidence showing that [the agent] is subject to

---

[1] The Supreme Court has noted that "[a]gency relationships . . . may be relevant to the existence of specific jurisdiction," but guidance in that respect is sparce. *Daimler*, 571 U.S. at 135 n.13. The Supreme Court specifically mentioned that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* It is not clear, otherwise, what might qualify. As one court noted, "it is unclear whether and how such a relationship may be used to establish personal jurisdiction following the Supreme Court's decision in *Daimler*." *Abitbol v. Homelink, LLC*, No. 2:20-CV-03654-RGK-PJW, 2020 WL 5102149, at *3 (C.D. Cal. July 28, 2020). Plaintiff does not allege that AHLIC directed any agent's actions in the State of Washington. Even if this Court were to find that something other than directing an agent's action in a forum state qualifies, Plaintiff fails to allege any agency relationship whatsoever.

[2] AHLIC assumes, for purposes of argument, that vicarious liability is a viable theory in the TCPA context. AHLIC notes, however, that this derives from the guidance of the Federal Communications Commission ("FCC"). Following recent Supreme Court decisions, the FCC's guidance in this respect is neither entitled to deference, nor controlling. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron*); *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025) ("The District Court is not bound by the FCC's interpretation of the TCPA."). AHLIC thus reserves the argument that vicarious liability is not an available theory under the TCPA for the claim asserted here. AHLIC further reserves the right to argue that Plaintiff's Washington state claims are not susceptible to theories of vicarious liability.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

this court's jurisdiction, and that [the agent's] actions are attributable to [the principal] because [the agent] was [the principal's] agent with respect to the calls that [the agent] allegedly made to plaintiff." *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *10 (N.D. Cal. Dec. 4, 2017). This Plaintiff fails to do. *See id.* Plaintiff does not allege facts to identify the calling entities, much less any facts supporting a relationship of any kind between the unnamed third parties and AHLIC. Plaintiff does not allege, even in conclusory terms, that AHLIC maintained the requisite control over the manner and means of the calls made by the unnamed third party(ies). *See, e.g.*, *Canary*, 2019 WL 1275343, at *7. *see also Bank v. Vivint Solar, Inc.*, No. 18-CV-2555, 2019 WL 2280731, at *5 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019) ("[P]laintiff has failed to allege any nonconclusory facts to establish an agency relationship between defendant and the maker of the Prerecorded Call."). The evidence submitted by AHLIC establishes the contrary—that AHLIC *does not* control the manner of means of any outreach by third party independent agents. (Rodman Decl. ¶ 6.) Indeed, it cannot even be said that the callers at issue here were third party independent agents of AHLIC. The policies Plaintiff purchased *are not AHLIC policies*. (*Id.* ¶ 9.) AHLIC does not issue policies that begin with #ACC. (*Id.*)

***ii. The mere reference to Aetna on the calls at issue is insufficient.***

Second, Plaintiff appears to presuppose that the mere alleged reference to "Aetna" on certain of the calls at issue renders AHLIC vicariously liable. It bears noting that Plaintiff, to this end, provides only conclusory summaries of the calls at issue, failing to provide detail beyond a third party "called on behalf of Aetna and Mutual of Omaha . . ." (*See* Dkt. 1-1 ¶ 34.) Plaintiff does not even provide a basis to believe that a reference to "Aetna" referred to AHLIC, one of many companies with Aetna in part of its name. (*See* Rodman Decl. ¶ 8.) Plaintiff's failure to provide detail here is telling given that, where Plaintiff does provide some detail, the alleged calls appeared to pertain to a wide range of policies and insurance



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

companies. (*See id.* at Call 21 [referring to "40 different" insurance agencies] and Call 23 [referring to "top 25 insurance carriers"].) These details belie any notion of vicarious liability and the notion that AHLIC controlled the manner and means of the calls at issue (which appear in part to pertain to competing entities).

In any event, Plaintiff's assumption that the mere reference to "Aetna" creates vicarious liability would fail on the pleadings, much less in light of the evidence attached hereto. *See, e.g.*, *Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 1032153, at *4 (N.D. Cal. Mar. 3, 2020) (holding, despite that the text at issue included the defendant's name, "Rogers FAC does not clearly allege what relationship, if any, he believes the sender of the text had with Postmates."); *Horton v. Nat'l Republican Senatorial Comm.*, No. 22-1000, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) (finding the mere fact that the a website soliciting donations to the defendant was used in a text message did not suffice to establish direct or vicarious liability); *Aaronson v. CHW Grp., Inc.*, No. 18-1533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) ("[T]he Complaint fails to allege any facts that reflect how the caller identified itself (e.g., as defendant's employee), the substance of the call . . . , or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control."); *see also Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (affirming that the plaintiff failed to adequately allege agency even where Subway was identified in the messages).

As detailed above, AHLIC does not control the manner and means in which independent insurance agents contact the agents' consumers. (Rodman Decl. ¶ 6.) AHLIC did not have knowledge of any outreach to Plaintiff and did not direct any outreach to Plaintiff. (*Id.* ¶ 7.) AHLIC has no record of outbound calls to Plaintiff. (*Id.*) And the policies Plaintiff allegedly acquired *are not AHLIC policies*. (*Id.* ¶ 9.) Plaintiff, conversely, alleges no facts—even in conclusory fashion—that AHLIC controls the manner and means in which independent



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

insurance agents (much less the unnamed third parties here) contact consumers. It is also fundamentally unclear how Plaintiff could contend the callers at issue here were independent insurance agents of AHLIC given that Plaintiff did not acquire an AHLIC policy. (*Id.*); *see also Abitbol v. Homelink, LLC*, No. 20-cv-03654, 2020 WL 5102149, at *3 (C.D. Cal. July 28, 2020) (granting 12(b)(2) motion where defendant submitted a declaration disputing any control over a purported agent, in contravention of the plaintiff's allegations); *Turizo v. Jiffy Lube Int'l, Inc.*, No. 19-CV-61140, 2019 WL 4737696, at *4 (S.D. Fla. Sept. 27, 2019) (same)

***iii. AHLIC did not ratify the calls at issue.***

Third, the only theory of vicarious liability Plaintiff endeavors to allege is ratification. (*See* Dkt. 1-1 ¶¶ 50-59, 69-76.) Ratification is defined as "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01(1)). Ratification requires "knowledge of material facts" regarding the agent's acts at issue or awareness that knowledge is lacking. *Id.* (quoting Restatement (Third) of Agency § 4.01 cmt b); *see also Naiman*, 2017 WL 5992123, at *13 (noting ratification requires actual knowledge that the third party at issue was violating the TCPA and acceptance of the benefits). An act is only ratifiable where "the actor acted or purported to act as an agent on the person's behalf." *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency § 4.03).

To support his theory, Plaintiff contends that (i) he purchased two policies he claims are issued by AHLIC, (ii) he informed AHLIC using "reasonable means" of "the unwanted calls" and unwanted policies[3] and (iii) he was charged for each policy and was not refunded. (Dkt. 1-1 ¶¶ 50-57, 69, 70.) This is manifestly insufficient on the pleadings, particularly in light of the

[3] It defies common sense, of course, that Plaintiff would acquire myriad insurance policies if he in fact was not interested in acquiring insurance.



WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

evidence submitted. *See, e.g.*, *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1141 (D. Nev. 2025) ("There is no allegation that Defendant knew that the numbers provided by third-party vendors purportedly included numbers on the NDNCR. Plaintiffs do not allege that BHHS knew that the real estate agents were making calls that violated the TCPA."); *Naiman*, 2017 WL 5992123, at *13 ("In order to allege that TranzVia 'ratified' Rose's allegedly improper calls, plaintiff must allege facts sufficient to allow the court to reasonably infer that TranzVia knew that Rose violated the TCPA and that it 'knowingly' accepted the benefits of Rose's violation."); *Canary*, 2019 WL 1275343, at *9 ("Canary's Complaint lacks sufficient facts to plausibly allege that Cordell or DAC acted or purported to act as an agent of Youngevity for the March 15 call.").

Plaintiff makes no contention that (i) the unnamed caller was even purporting to act as an agent for AHLIC a or (ii) AHLIC had any knowledge (or awareness that such knowledge was lacking) of the calls the unnamed agents were making, much less that any calls were being made in violation of the TCPA. At most, Plaintiff obliquely claims he used "reasonable means to tell Aetna about the unwanted calls" and purchase of insurance. (Dkt. 1-1 ¶¶ 51, 55.) Plaintiff provides not even the method by which he contacted AHLIC, much less what he said or to whom. Plaintiff also fails to so much as identify the third party caller(s). And in none of the purported calls does Plaintiff contend the caller claimed to be an agent of AHLIC. Again, in any event, the evidence is to the contrary. AHLIC has no record of telephonic outreach to Plaintiff. (Rodman Decl. ¶ 7.) AHLIC was not aware of any telephonic outreach to Plaintiff by any third party. (*Id.*) Perhaps most importantly, Plaintiff *did not* acquire AHLIC policies. (*Id.* ¶ 9.) There could thus be no conceivable "affirmance" of any purportedly unlawful act.

Furthermore, even if Plaintiff did acquire an AHLIC policy (he did not), that would not suffice to establish agency. *See, e.g.*, *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 587 (S.D. Ohio 2016) (finding, despite that the defendant purchased the sales lead relating to



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Plaintiff, that there was no ratification at the 12(b)(2) stage based on the evidentiary submission); *see also id.* at 588 (finding no actual knowledge, and determining it was insufficient, without more, that the plaintiff alerted the defendant through prior lawsuits); *Naiman*, 2017 WL 5992123, at *13 (rejecting ratification theory in 12(b)(2) context in a TCPA matter, even where there was a contract between the principal and agent).

Plaintiff fails entirely to allege facts to make his ratification theory plausible, and the evidence submitted makes clear that AHLIC did not ratify the calls at issue.

**D. Haling AHLIC Into Washington Would Offend Traditional Notions of Fair Play and Substantial Justice.**

Finally, to hale AHLIC before this Court without any intentional, suit-related conduct connecting it to the State of Washington would plainly offend traditional notions of fair play and substantial justice. *Walden*, 571 U.S. at 283. This third element is reached only if Plaintiff can establish the first two Ninth Circuit factors. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015)

Plaintiff cannot meet the first two factors, and as a result this element need not be considered. It bears noting, however, that haling AHLIC into Washington here would offend traditional notions of fair play and substantial justice. Plaintiff has alleged nothing other than unnamed third parties using the name "Aetna" and selling two policies he claims (without support) were issued by AHLIC. Such allegations would enable anyone to create personal jurisdiction over an insurance company in the TCPA context simply by stating its name on a phone call to a forum resident.

* * *

Plaintiff seeks to hale AHLIC into the Western District of Washington based solely on contact by unnamed third parties endeavoring to sell insurance. AHLIC is not alleged to have called and is not alleged to have had any involvement in the underlying calls. Plaintiff did not



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

so much as acquire an AHLIC policy. Plaintiff does not colorably attempt to establish agency and does not so much as allege the identities of the third-party callers, much less any facts to contravene the evidence submitted by AHLIC that it had no knowledge of the purported outreach at issue or even issued the policy at issue. Plaintiff thus has not alleged that AHLIC is subject to specific jurisdiction under the purposeful direction or purposeful availment tests. The evidence makes clear AHLIC is not. AHLIC should thus be dismissed for lack of personal jurisdiction, and without jurisdictional discovery. *See, e.g.*, *Dignity Health v. Blue Cross Blue Shield of Georgia, Inc*., No. 25-CV-07336-JST, 2026 WL 934194, at *5 (N.D. Cal. Apr. 7, 2026) (setting forth the standard for jurisdictional discovery and rejecting the request for such discovery because the plaintiff had not met its burden).

## CONCLUSION

For the reasons stated above, AHLIC respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

DATED this 1st day of July, 2026.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: /s/John C. Versnel, III
John C. Versnel, III, WSBA No. 17755
Maxwell Wesemann, WSBA No. 59080
Of Attorneys for Aetna Health and Life Insurance Company

520 Pike Street, Suite 2350
Seattle, WA 98101
206.709.5900 (Main)
206.709.5901 (Fax)
john.versnel@wilsonelser.com
maxwell.wesemann@wilsonelser.com

DATED this 1st day of July, 2026.

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

By: /s/Mark S. Eisen
Mark S. Eisen
ISBA No. 6312738
Of Attorneys for Aetna Health and Life Insurance Company

71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
312.212.4956 (Main)
meisen@beneschlaw.com

## CERTIFICATE OF SERVICE

I hereby declare that on this day I caused the foregoing document to be served upon all individual(s) listed below by the following means:

| PARTY/COUNSEL | DELIVERY METHOD |
|---|---|
| **Counsel for Plaintiff:**<br>Peter Schneider<br>Northwest Debt Resolution, LLC<br>10900 4th street, Suite 2300<br>Bellevue, WA 98004 | [X] E-Filed/E-mail |
| **Counsel for Defendant Mutual of Omaha Insurance Company**<br>Patrick J. Fitzgerald<br>Watstein Terepka LLP<br>75 14th Street NE, Ste. 2600<br>Atlanta, Georgia 30309 | [X] E-Filed/E-mail |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated on this 1st day of July, 2026 at Seattle Washington.

*s/Josie J. Westmoreland*
Josie J. Westmoreland. Legal Assistant
Josie.westmoreland@wilsonelser.com



WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)