The Honorable Tiffany M. Cartwright

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

RON LITTMAN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1-10,

Defendants.

No. 3:26-cv-05538-TMC

**DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

NOTE ON MOTION CALENDAR: July 29, 2026

ORAL ARGUMENT REQUESTED

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and on the date noted above, Defendant Mutual of Omaha Insurance Company ("Mutual of Omaha") will and hereby does move this Court for an order dismissing all claims asserted against it in the Class Action Complaint (the "Complaint") filed by Plaintiff Ron Littman ("Plaintiff"). This Motion is based on the following grounds:

(1) Rule 12(b)(2)—lack of personal jurisdiction: The Court lacks personal jurisdiction over Mutual of Omaha as to all claims. Mutual of Omaha is a Nebraska insurer that is not at home in Washington, placed none of the challenged calls, and the independent marketers' Washington-directed calls cannot be imputed to it absent an agency relationship the Complaint does not plausibly plead.

(2) Rule 12(b)(6)—failure to state a claim: Independently and in the alternative, the Complaint fails to state a claim against Mutual of Omaha on every count: (a) the Complaint fails to plausibly allege that Mutual of Omaha is directly or vicariously liable for the calls; (b) the Complaint impermissibly groups the two unrelated insurer defendants together, contrary to Rules 8 and 9(b); (c) Counts Three, Four, and Five rest on provisions that afford no private right of action; (d) Count Eleven (WCPA) is derivative and independently fails to plead injury to business or property and causation; (e) Count Twelve seeks injunctive relief which is a remedy, not a freestanding cause of action; and (f) in the alternative, the established business relationship defeats the national do-not-call claim (Count Two).

This Motion is based on this Notice; the following Memorandum of Points and Authorities; the concurrently filed Declaration of Maha Peterson in support; the pleadings and papers on file; and such further argument and evidence as the Court may consider.

# TABLE OF CONTENTS

I. INTRODUCTION ..... 9

II. FACTUAL BACKGROUND ..... 11

A. The Calls Made to Plaintiff Were from Independent Marketers Using Non-Defendant Names. ..... 11

B. Plaintiff Purchased Mutual of Omaha Policies. ..... 12

III. LEGAL STANDARD ..... 13

IV. ARGUMENT ..... 14

A. The Court Lacks Personal Jurisdiction Over Mutual of Omaha. ..... 14

1. The Calls Were Placed by Independent, Spoofed Third Parties, Not Mutual of Omaha. ..... 15

2. The Charted Calls Were Not "Expressly Aimed" at Washington. ..... 16

B. The Complaint Fails to Plausibly Allege That Mutual of Omaha Is Directly or Vicariously Liable for the Calls. ..... 17

1. Plaintiff Fails to Allege That Mutual of Omaha is Directly Liable for Mr. Littman's Calls ..... 18

2. Plaintiff Fails to Plausibly Allege That Mutual of Omaha is Vicariously Liable for Calls to Mr. Littman Under Any Agency Theory. ..... 18

a. No Actual Authority (Formal Agency). ..... 18

b. No Apparent Authority. ..... 19

c. No Ratification. ..... 20

C. The Complaint Impermissibly Groups the Two Defendants Together. ..... 21

D. Counts Three, Four, and Five Rest on Provisions That Provide No Private Right of Action. ..... 22

1. Count Five (47 U.S.C. § 227(e) / 47 C.F.R. § 64.1601(e)). ..... 22

2. Counts Three and Four (47 C.F.R. § 64.1200(d)). ..... 22

E. Count Eleven (WCPA) Fails as Derivative and for Want of Injury to Business or Property and Causation....................................... 23

F. Count Twelve (Injunctive Relief) Fails Because It Is a Remedy, Not a Cause of Action. ............................................................ 24

G. In the Alternative, Even If Any Call Is Attributed to Mutual of Omaha, the Established Business Relationship Defeats the National Do-Not-Call Claim (Count Two)...................................... 24

V. CONCLUSION........................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) .......... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12, 19

*Ashland Hosp. Corp. v. SEIU, Dist. 1199 WV/KY/OH*,
708 F.3d 737 (6th Cir. 2013) .......... 20

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 14

*Barton v. Am. Family Life Assurance Co. of Columbus*,
2026 WL 177598 (W.D. Wash. Jan. 22, 2026) .......... 9, 18

*Barton v. George*,
2025 WL 3078287 (W.D. Wash. Nov. 4, 2025) .......... 9, 13, 14

*Barton v. Pinnacle Home Improvements LLC*,
2024 WL 2943805 (W.D. Wash. June 11, 2024) .......... 7, 9, 15

*Barton v. Real Innovation Inc.*,
792 F. Supp. 3d 1195 (W.D. Wash. 2025) .......... 9, 15, 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 12

*Charvat v. NMP, LLC*,
656 F.3d 440 (6th Cir. 2011) .......... 21

*Cox v. Gritman Med. Ctr.*,
170 F.4th 724 (9th Cir. 2026) .......... 13

*Cubbage v. Talbots, Inc.*,
2010 WL 2710628 (W.D. Wash. July 7, 2010) .......... 24

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 13

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) .......... 19

*Edwards v. Juan Martinez, Inc.*,
506 F. Supp. 3d 1061 (D. Nev. 2020) .......... 17

*Gibson v. City of Portland*,
165 F.4th 1265, 1271 (9th Cir. 2026) .......... 19

*Gragg v. Orange Cab Co.*,
942 F. Supp. 2d 1111 (W.D. Wash. 2013) .......... 22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wash. 2d 778 (1986) .......... 22

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
58 F. Supp. 3d 1166 (W.D. Wash. 2014) .......... 21

*Henderson v. United Student Aid Funds, Inc.*,
918 F.3d 1068 (9th Cir. 2019) .......... 18

*Hollis v. eXp Realty LLC*,
2025 WL 2711424 (W.D. Wash. Sept. 23, 2025) .......... 8, 17, 18

*In re DISH Network, LLC*,
28 FCC Rcd. 6574 (2013) .......... 8, 16, 17, 19

*Jones v. Royal Admin. Servs., Inc.*,
887 F.3d 443 (9th Cir. 2018) .......... 8, 17

*Kristensen v. Credit Payment Servs. Inc.*,
879 F.3d 1010 (9th Cir. 2018) .......... 8, 16

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .......... 9, 23

*Markoff v. Puget Sound Energy, Inc.*,
9 Wash. App. 2d 833 (2019) .......... 23

*Meyer v. Cap. All. Grp.*,
2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) .......... 20

*MFG Universe Corp. v. Next Gen LED, Inc.*,
2022 WL 3028081 (W.D. Wash. Aug. 1, 2022) .......... 19

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 12, 14, 15

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) .......... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 12, 13

*Shute v. Carnival Cruise Lines*,
113 Wash. 2d 763 (1989) ... 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ... 10

*Stark v. Stall*,
2019 WL 3718878 (S.D. Cal. Aug. 7, 2019) ... 17

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ... 8, 12, 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ... 20

*United States v. Bonds*,
608 F.3d 495 (9th Cir. 2010) ... 17

*Van Baalen v. Mutual of Omaha Insurance Co.*,
729 F. Supp. 3d 1239 (D.N.M. 2024) ... 21

*Vance v. Amazon.com Inc.*,
525 F. Supp. 3d 1301 (W.D. Wash. 2021) ... 23

*Veridian Credit Union v. Eddie Bauer, LLC*,
295 F. Supp. 3d 1140 (W.D. Wash. 2017) ... 21

*Walden v. Fiore*,
571 U.S. 277 (2014) ... 14

*Williams v. Geico Gen. Ins. Co.*,
497 F. Supp. 3d 977 (W.D. Wash. 2020) ... 23

*Winters v. Grand Caribbean Cruises Inc.*,
2021 WL 3709854 (D. Ariz. Aug. 20, 2021) ... 7, 13, 14, 15

*Worsham v. Travel Options, Inc.*,
2016 WL 4592373 (D. Md. 2016) ... 20, 21

*Worsham v. Travel Options, Inc.*,
678 F. App'x 165 (4th Cir. 2017) ... 20

*Young v. Toyota Motor Sales, U.S.A.*,
196 Wash. 2d 310 (2020) ... 22

*Zean v. Fairview Health Servs.*,
858 F.3d 520 (8th Cir. 2017) ... 23

**Federal Regulations**

47 C.F.R. § 64.1200 ........ 21, 24

47 C.F.R. § 64.1601 ........ 20

**Federal Codes**

47 U.S.C. § 227 ........ 19, 20, 21, 23

**Washington Statutes**

RCW 19.86 ........ 11, 20

RCW 4.28.185 ........ 13

RCW 80.36.390 ........ 11, 21, 22

RCW 80.36.400 ........ 11

**Rules**

Fed. R. Civ. P. 12 ........ 12

Fed. R. Civ. P. 8 ........ 8, 19

Fed. R. Civ. P. 9 ........ 8, 12

## I. INTRODUCTION

This is a putative class action against the wrong defendant. Every one of the twenty-six telemarketing calls in the Complaint's own chart was placed by an independent marketing entity operating under a name such as "U.S. Funeral Expenses," "American Benefits," and the like, that the Complaint admits is "not the business name of Mutual of Omaha . . . or any of their agents." Compl. ¶¶ 44–49. Mutual of Omaha Insurance Company ("Mutual of Omaha") is a Nebraska insurer that placed none of those calls, supplied no dialing equipment, and wrote no script. The marketers shopped a menu of carriers boasting of ties to "40 different" and "top 25 insurance carriers" and named Mutual of Omaha in some of those calls, but only two charted calls are alleged to have resulted in the purchase of a Mutual of Omaha policy. Plaintiff nonetheless sues Mutual of Omaha for the lot, alleging "no fewer than fifty (50)" TCPA violations and "one hundred (100)" Consumer Protection Act violations (from each defendant alike) on nothing more than the conclusory label that these independent, identity-concealing callers were Mutual of Omaha's "agents." Compl. ¶¶ 115, 134, 193. That label cannot carry the case.

*First*, the Court lacks personal jurisdiction over Mutual of Omaha. Because Mutual of Omaha placed no call into Washington, the independent marketers' calls can supply specific jurisdiction only if their forum contacts are attributable to Mutual of Omaha through an agency relationship, and the Complaint pleads only the conclusory label, which Mutual of Omaha's declaration affirmatively controverts. On materially identical facts, a court dismissed a TCPA claim for want of personal jurisdiction where the defendant's declaration denied placing the calls and the plaintiff rested on conclusory agency allegations. *Winters v. Grand Caribbean Cruises Inc.*, 2021 WL 3709854, at *4–7 & n.1 (D. Ariz. Aug. 20, 2021). This Court's decision in *Barton v. Pinnacle Home Improvements LLC* does not point the other way but rather confirms the rule. There, the defendant placed the messages *itself*, so the only conduct directed at Washington was the defendant's own, and the court found that those messages were "expressly aimed" at the forum. 2024 WL 2943805, at *1, *4–5 (W.D. Wash. June 11, 2024). Plaintiff never pled that Mutual of Omaha called him. The only Washington-directed acts alleged were those of independent third

parties—indeed, Plaintiff admits that when he tried calling the offending numbers back, he "did not reach" Mutual of Omaha "or any of their agents." Compl. ¶¶ 37–38.

*Second*, the Complaint fails to plead that Mutual of Omaha is vicariously liable for the independent callers. Because Mutual of Omaha placed none of the calls, it can be liable only if those callers were its agents—and, under the TCPA, agency requires one of three federal common law theories: actual authority, apparent authority, or ratification. *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018); *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). The Complaint pleads none of them. It alleges no right to control the callers' conduct, so there is no actual authority. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449–50 (9th Cir. 2018). Apparent authority fails because it depends on a manifestation by Mutual of Omaha—Plaintiff's belief that a caller spoke for Mutual of Omaha must trace to something *Mutual of Omaha* did, not to the caller's own words. *See Hollis v. eXp Realty LLC*, 2025 WL 2711424, at *3 (W.D. Wash. Sept. 23, 2025). Yet the Complaint pleads the opposite: Plaintiff admits the callers used names that were not Mutual of Omaha's and concealed who they were. Compl. ¶¶ 44–49. And ratification fails because the Complaint alleges no facts showing Mutual of Omaha knew of, much less affirmatively approved, any specific caller's unlawful conduct. *See Kristensen,* 879 F.3d at 1014.

*Third*, the Complaint engages in impermissible group pleading. It lumps the two unrelated insurers together, demanding the same fifty-plus violations from each even though its chart shows the marketers overwhelmingly pitched and sold Aetna policies and produced only two Mutual of Omaha policies. That undifferentiated pleading fails Rule 8. *See Gibson v. City of Portland*, 165 F.4th 1265, 1291–93 (9th Cir. 2026) (finding shotgun pleading impermissible). Additionally, for the fraud-based WCPA count, Rule 9(b) does not allow Plaintiff to charge Mutual of Omaha with conduct the chart attributes to others. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (claims sounding in fraud require an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations").

*Fourth*, the remaining counts fail for count-specific reasons: Counts Three through Five

rest on provisions affording no private right of action; Count Eleven (WCPA) is derivative and fails to plead injury to business or property and causation; and Count Twelve seeks a remedy, not a claim. The Complaint should therefore be dismissed in its entirety.

Alternatively, even if any charted call were attributed to Mutual of Omaha, the national do-not-call claim (Count Two) independently fails. Mutual of Omaha's business records, which the Court may consider under the incorporation-by-reference doctrine (*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)), show that Plaintiff was an active Mutual of Omaha dental policyholder before and throughout the charted-call period and himself provided Mutual of Omaha the very cellular number he now says was called. Declaration of Maha Peterson ("Peterson Decl.") ¶¶ 14–15 & Ex. A. That gives rise to an established business relationship ("EBR") that exempts the calls preceding his do-not-call request from the national do-not-call prohibition. The Complaint should therefore be dismissed in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff is a Washington resident who alleges he received telemarketing calls on a cellular telephone bearing a Washington area code that he had registered on the National Do-Not-Call Registry more than 30 days prior to the calls he received. Compl. ¶¶ 11, 21, 24. Mutual of Omaha is a Nebraska corporation with its principal place of business in Omaha, Nebraska; Aetna Health and Life Insurance Company is a separate, unrelated insurer headquartered outside of Washington. Compl. ¶¶ 12, 14. Mutual of Omaha placed none of the calls at issue. *See* Peterson Decl. ¶¶ 10–12.

### A. The Calls Made to Plaintiff Were from Independent Marketers Using Non-Defendant Names.

The Complaint alleges a generic lead-generation model in which third-party "telemarketer[s]" build calling lists and then "strike[] a deal" with a specific seller to pitch its products. Compl. ¶¶ 3–9. The Complaint does not allege that Mutual of Omaha placed any call, supplied any dialing system, wrote any script, authorized any caller to use its name, or directed any caller's conduct.

The Complaint submits a call chart listing 26 (twenty-six) calls spanning August 2025 through February 2026. *Id.* at 5–8. Plaintiff chose to plead a call-by-call chart. *Id.* That chart is therefore the factual anchor for his claims, and the Court need not credit broader, conclusory allegations that conflict with, or exceed, the chart's call-specific allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (internal citations omitted). By the chart's own descriptions, each was placed by an independent marketer operating under one of at least seven aliases—"U.S. Funeral Expenses," "American Benefits," "Infinity Health Clinics," "Healthcare Benefits," "Senior Financial Solutions," "Senior Solutions," and "American United Health"—none of which, the Complaint admits, is "the business name of Mutual of Omaha . . . or any of their agents." Compl. ¶¶ 44–49. Sixteen of the twenty-six entries name Mutual of Omaha (calls 1–4, 6–9, 15, 17, 18, 20–22, and 24–25), but the references are uniformly insubstantial: in most, the marketer claimed to call "on behalf of Aetna and Mutual of Omaha," and in several it merely listed Mutual of Omaha among the "40 different" or "top 25 insurance carriers" it claimed to "work with" while quoting or selling an *Aetna* policy. *Id.* Only two charted calls are alleged to have resulted in a Mutual of Omaha policy at all: call 17 (Dec. 23, 2025) and call 18 (Jan. 7, 2026). Critically, the Complaint alleges the callers "spoofed" their numbers and that, when Plaintiff called them back, he "did not reach Mutual of Omaha or Aetna or any of their agents." Compl. ¶¶ 37–38. The chart further reflects that Plaintiff sent do-not-call requests to Mutual of Omaha on several occasions beginning November 18, 2025; nine of the sixteen Mutual of Omaha-referenced calls (calls 1–4, 6–9 and 15) predate that first request.

**B. Plaintiff Purchased Mutual of Omaha Policies.**

Plaintiff alleges that he purchased two Mutual of Omaha policies only "to identify who the insurance agent was selling for," and that he immediately demanded cancellation. Compl. at 6–7; ¶¶ 61–68. The Complaint does not acknowledge any earlier dealings between Plaintiff and Mutual of Omaha. A review of Plaintiff's file with Mutual of Omaha—embraced by the Complaint—reflects that months before the at-issue calls Plaintiff applied for and purchased Mutual of Omaha

dental coverage. Peterson Decl. ¶¶ 14–15 & Ex. A. At that time, he also provided Mutual of Omaha the cellular number he now says was called. *Id.* ¶¶ 14–15. These facts reflect that he had an existing business relationship with Mutual of Omaha that prohibits his TCPA do-not-call counts and are addressed in the alternative below. *See infra* Part IV.G; Peterson Decl. ¶¶ 14–15 & Ex. A.

The Complaint pleads twelve counts: five under the federal TCPA (Counts One through Five, on behalf of nationwide classes), four under the Washington Telephone Solicitation Act, RCW 80.36.390 ("WTSA") (Counts Six through Nine), one under the Washington Automatic Dialing and Announcing Device Act, RCW 80.36.400 (Count Ten),[1] one under the Washington Consumer Protection Act, RCW 19.86 ("WCPA") (Count Eleven), and a standalone claim for injunctive relief (Count Twelve). Each count is pleaded against "the Defendants" collectively. Plaintiff alleges the TCPA was violated "on no fewer than fifty (50) occasions" and the WCPA "on no fewer than one hundred (100) occasions." Compl. ¶¶ 115, 134, 193.

## III. LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction and must make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Although uncontroverted allegations are taken as true and affidavit conflicts are resolved for the plaintiff, a plaintiff "may not simply rest on the bare allegations of the complaint" once they are controverted by a defendant's declaration. *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action" and "mere conclusory statements" are

[1] The Washington statutory counts are limited by their own terms. The WTSA and WADAD reach only "telephone solicitation intended to be received by telephone customers within the state." RCW 80.36.390(9)–(10); RCW 80.36.400(2). Those provisions confer no rights on, and impose no liability as to, calls directed to recipients outside Washington. Accordingly, Counts Six through Ten cannot extend to non-Washington recipients, and any effort to press these Washington-law claims on behalf of a class reaching beyond Washington customers exceeds the statutes' scope. Mutual of Omaha reserves the resulting class-scope challenge for the appropriate stage.

insufficient. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Threadbare recitals and "mere conclusory statements" are disregarded, and the remaining allegations must state a plausible claim. *Iqbal*, 556 U.S. at 678. Documents for which authenticity is not contested, and a plaintiff's complaint renders them integral, are properly considered on a motion to dismiss for failure to state a claim. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Likewise, "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." *Id.* Where a claim sounds in fraud, Rule 9(b) requires the *who, what, when, where, and how* of the misconduct and, in a multi-defendant case, requires the plaintiff to "identify the role of each defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

## IV. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Mutual of Omaha.

Because Washington's long-arm statute reaches as far as due process permits, the state-law and constitutional questions merge into a single inquiry: whether exercising jurisdiction over Mutual of Omaha comports with federal due process. *Shute v. Carnival Cruise Lines*, 113 Wash. 2d 763, 766–67 (1989). Washington's long-arm statute authorizes personal jurisdiction over out-of-state defendants "who in person or through an agent" do various acts, including "transacting . . . any business with Washington or committing . . . a tortious act within Washington." *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 733 (9th Cir. 2026); RCW 4.28.185. Mutual of Omaha is not "at home" in Washington, so there is no general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (noting the paradigm bases for general jurisdiction as the place of incorporation and principal place of business). Because TCPA claims sound in tort, specific jurisdiction is governed by the *Calder* purposeful-direction test: the plaintiff must show an intentional act "expressly aimed at the forum state" causing harm in the forum state. *Schwarzenegger*, 374 F.3d at 803. Critically, that showing must be made *as to each defendant* and *as to each call*, and a defendant that did not place a call is subject to jurisdiction only if the caller's contacts are

attributable to it through agency. *Barton v. George*, 2025 WL 3078287, at *4–5 (W.D. Wash. Nov. 4, 2025).

### 1. The Calls Were Placed by Independent, Spoofed Third Parties, Not Mutual of Omaha.

Mutual of Omaha placed no call, so the only contacts that could matter are calls the Complaint specifically attributes to it. The chart names Mutual of Omaha in sixteen of its twenty-six entries (calls 1–4, 6–9, 15, 17, 18, 20–22, 24–25), each describing an independent marketer soliciting "on behalf of Aetna and Mutual of Omaha" or listing Mutual of Omaha among dozens of carriers it claimed to represent. But the Complaint affirmatively alleges those callers "spoofed" their numbers and that callbacks "did not reach Mutual of Omaha … or any of their agents." Compl. ¶¶ 37–38. The calls of an independent third party are attributable to a non-calling defendant for jurisdictional purposes only through an agency relationship resting on the defendant's "right to substantially control" the caller's activities. *Winters*, 2021 WL 3709854, at *6–7. The Complaint pleads no such control, asserting only the label "agents." Compl. ¶¶ 91, 93, 95, 97, 99, 101, 106. Indeed, in the accompanying declaration of Maha Peterson, Mutual of Omaha expressly disclaims any agency relationship, stating that it does not employ or contract with any of the marketer names alleged in the Complaint; "did not select Plaintiff" as a "recipient of any telephone call described in the Complaint;" and "did not instruct any person to identify themselves using a false or fictitious business name, or to transmit inaccurate or masked caller-identification information." Peterson Decl. ¶¶ 9, 11–12. Thus, the court "may not assume the truth of allegations . . . contradicted by" Mutual of Omaha's declaration. *Winters*, 2021 WL 3709854, at *3. Nor will the court treat calls as placed "on behalf of" a defendant absent allegations "with specificity" that they were. *George*, 2025 WL 3078287, at *2 & n.3. The ten Aetna-only calls are irrelevant to Mutual of Omaha, and the rest are not its forum contacts absent the agency the Complaint fails to plead below. *See infra* Part IV.B.

Because the forum contacts of a non-calling defendant can arise only through agency, and because the Complaint pleads no agency beyond the conclusory "agents" label—which Mutual of

Omaha's declaration affirmatively controverts—Mutual of Omaha has no contact with Washington on which specific jurisdiction could rest. *See Winters*, 2021 WL 3709854, at *6–7 (imputation requires the "right to substantially control" the caller); *George*, 2025 WL 3078287, at *2 & n.3 (calls are not treated as placed "on behalf of" a defendant absent allegations pleaded "with specificity"). Once the defendant controverts jurisdiction by declaration, Plaintiff "may not simply rest on the bare allegations of the complaint." *Ranza*, 793 F.3d at 1068. Absent adequately pleaded agency, Mutual of Omaha has no Washington contact, and the Court need not reach express aiming, which the following subsection addresses only in the alternative.

**2. The Charted Calls Were Not "Expressly Aimed" at Washington.**

Even assuming the calls that name Mutual of Omaha could be attributed to it, Plaintiff still fails to satisfy the express aiming requirement. Due process requires a connection between Mutual of Omaha's own conduct and the forum, not merely the plaintiff. *See, e.g., Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) (a defendant's knowledge of a plaintiff's forum connection is not express aiming). It was the independent marketers, not Mutual of Omaha, who chose to dial a Washington number, and the Complaint concedes Mutual of Omaha could not even be reached through them. Compl. ¶¶ 37–38. The recipient's Washington area code is therefore not Mutual of Omaha's forum-directed act. And once Mutual of Omaha controverts jurisdiction by declaration, Plaintiff "may not simply rest on the bare allegations of the complaint." *Ranza,* 793 F.3d at 1068.

*Winters v. Grand Caribbean Cruises* is instructive here. In that case, the plaintiff relied on conclusory "buzz words" and "right to control" allegations to establish the defendant's agency relationship with a telemarketing agent. 2021 WL 3709854, at *4–5. The court rejected plaintiff's argument, reasoning that the complaint was "devoid of any specific, non-conclusory factual allegations outlining the nature of the contractual relationship" and crediting the defendant's declaration from its president, avowing that the company has "never placed or initiated a telephone call to any of the plaintiffs in this action." *Id.* & n.1. The court ultimately dismissed for lack of

personal jurisdiction, holding that (1) conclusory agency allegations cannot impute a caller's contacts, (2) apparent authority cannot rest on "[m]anifestations made by the caller," and (3) ratification allegations fail absent facts showing *how* the defendant "obtain[ed] knowledge of" the caller's conduct. *Id.* at *5–7. Each holding fits here: Mutual of Omaha's declaration denies placing or controlling the calls (Peterson Decl. ¶¶ 10–12); the callers used non-Mutual-of-Omaha aliases (Compl. ¶¶ 44–49), so any belief came from the *callers*, not Mutual of Omaha; and the spoofed, concealed numbers (Compl. ¶¶ 37–38) negate any plausible Mutual-of-Omaha knowledge of a specific marketer's conduct.

This Court's decision in *Barton v. Pinnacle Home Improvements LLC*, 2024 WL 2943805 (W.D. Wash. June 11, 2024), is not to the contrary. Jurisdiction attached there for reasons absent here. The defendant in *Pinnacle* itself "sent [the plaintiff] unwanted marketing text messages and phone calls," and was thus the direct caller, not a non-calling principal. *Id.* at *1, *4. And the plaintiff communicated his Washington location to the defendant through the defendant's own website "live chat," which the defendant represented was staffed by "a Live Person" and whose transcripts it "save[d] and review[ed]." *Id.* at *4. The Court therefore charged the defendant with knowledge of what the plaintiff told it and held the defendant's own subsequent messages "purposefully directed" at Washington. *Id.* at *5. The Court pointedly declined jurisdiction over the messages sent before that direct communication, because "nothing in the record suggest[ed]" the defendant had reason to know the plaintiff was in Washington until he told it directly. *Id.* Mutual of Omaha is the opposite case on every axis: it placed no call, operated no website or chat Plaintiff ever used, and received no direct communication routing the marketers' conduct into Washington. The only Washington-directed acts were those of independent third parties whose contacts cannot be imputed to Mutual of Omaha absent the agency the Complaint fails to plead. The Complaint should be dismissed against Mutual of Omaha for lack of personal jurisdiction.

### B. The Complaint Fails to Plausibly Allege That Mutual of Omaha Is Directly or Vicariously Liable for the Calls.

Plaintiff cannot hold Mutual of Omaha liable for calls it did not place. He pleads no direct

liability, and his vicarious-liability theories—actual authority, apparent authority, and ratification—fail on the face of the Complaint.

**1. Plaintiff Fails to Allege That Mutual of Omaha Is Directly Liable for Mr. Littman's Calls.**

Under the TCPA, only the entity that "initiates"—that is, physically places—the unlawful call is directly liable. *In re DISH Network*, 28 FCC Rcd. at 6582–84. A seller whose products a third party merely pitches has not itself "ma[d]e" the call and so cannot be directly liable for it. *Id.*

The Complaint does not allege that Mutual of Omaha placed, initiated, dialed, or transmitted any of the twenty-six charted calls. To the contrary, it alleges that the calls were placed by independent marketers operating under names that are not Mutual of Omaha's, (Compl. ¶¶ 44–49), that those callers "spoofed" their numbers, and that when Plaintiff called back he "did not reach Mutual of Omaha … or any of their agents." *Id.* ¶¶ 37–38. Plaintiff has thus pleaded Mutual of Omaha out of any theory of direct liability.

**2. Plaintiff Fails to Plausibly Allege that Mutual of Omaha is Vicariously Liable for Calls to Mr. Littman Under Any Agency Theory.**

Because the Complaint pleads no direct liability, Plaintiff's claims against Mutual of Omaha survive only if he plausibly alleges vicarious liability. *In re DISH Network*, 28 FCC Rcd. at 6584. The TCPA "incorporat[es] federal common law agency principles of vicarious liability." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018). Liability must rest on one of three theories: apparent authority, actual authority, or ratification, and an action taken for the benefit of a seller by a third party, without more, does not trigger liability. *In re DISH Network, LLC*, 28 FCC Rcd. at 6584, 6593; *Hollis v. eXp Realty LLC*, 2025 WL 2711424, at *3 (W.D. Wash. Sept. 23, 2025). The Complaint pleads no viable theory as to Mutual of Omaha.

**a. No Actual Authority (Formal Agency).**

To the extent Plaintiff relies on a control theory, the Ninth Circuit's decision in *Jones v. Royal Admin. Servs., Inc.* forecloses it on these facts. 887 F.3d at 450. "In determining whether vicarious liability may be imposed [under an actual agency analysis], the 'extent of control

exercised by the [principal]' is the 'essential ingredient.'" *Id.* (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)). In the telemarketing context, this means that the alleged principal must have the right to control the "manner and means" by which the call was made. *Jones*, 887 F.3d at 450; *Edwards v. Juan Martinez, Inc.*, 506 F. Supp. 3d 1061, 1070–71 (D. Nev. 2020). A seller is not subject to manner-and-means liability for an independent telemarketer that "set its own hours," "provided its own equipment," and "sold [products] for multiple companies" in the "distinct occupation" of telemarketing; such a seller "did not have any control of a telemarketer's call until the telemarketer decided to pitch a [seller] product." *Jones*, 887 F.3d at 451–53. Additionally, a plaintiff must allege that the principal "directed and had the power to compel" the caller to "make telephone calls on his behalf that violate the TCPA." *Stark v. Stall*, 2019 WL 3718878, at *6 (S.D. Cal. Aug. 7, 2019).

The Complaint alleges none of this—not control over content, timing, manner, or means. Worse, it pleads the opposite: the marketers touted affiliations with "40 different" and "top 25 insurance carriers," listing Mutual of Omaha as one name among dozens while also quoting Aetna, the paradigm of an independent lead-generator serving many principals, not a Mutual of Omaha agent. Further, he alleges that the marketers "spoofed" their numbers such that they could not be reached as "Mutual of Omaha . . . or any of their agents." Compl. ¶¶ 37–38. While *Jones* arose at summary judgment, its reasoning confirms that the Complaint's conclusory "agents" label cannot bear the weight Plaintiff places on it.

**b. No Apparent Authority.**

Apparent authority exists "only as to those to whom the principal has manifested that an agent is authorized," and the third party's belief must be "traceable to the principal's manifestations." *Hollis*, 2025 WL 2711424, at *3. That is where this Complaint defeats itself: it alleges the callers used names like "U.S. Funeral Expenses" and "American Benefits," conceding that these "are not the business name of Mutual of Omaha . . . or any of their agents." Compl. ¶¶ 44–49. A caller who conceals the seller's identity and operates under an unrelated alias makes no manifestation attributable to Mutual of Omaha on which Plaintiff could reasonably rely. This case

is therefore the inverse of the decisions sustaining apparent authority claims against insurers and brokers. In *Hollis*, the manifestation came from the principal's own website and the statements of a real estate broker advertised on the website and thus an authorized agent. 2025 WL 2711424, at *4. And in *Barton v. American Family Life Assurance Co. of Columbus*, the plaintiff alleged the insurer had given the marketer "access to their computer systems … [and] permission to use their business names." 2026 WL 177598, at *4 (W.D. Wash. Jan. 22, 2026). Plaintiff alleges no comparable manifestation by Mutual of Omaha here.

**c. No Ratification.**

Plaintiff also fails to plead that Mutual of Omaha ratified the independent callers' alleged DNC violations. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (internal quotations omitted). It "may create an agency relationship when none existed before if the acts are done by an actor . . . who is not an agent but pretends to be." *Id.* at 1074. "There are two ways to ratify a third party's acts. The first is by a knowing acceptance of the benefit . . . the second way . . . is through willful ignorance." *Id.* at 1073.

Plaintiff alleges only that two marketers sold him Mutual of Omaha policies (calls 17 and 18) and that further calls followed his do-not-call requests. Compl. at 6–8. At most, those allegations show that Mutual of Omaha benefitted from the calls—and benefit alone is not ratification. *In re DISH Network*, 28 FCC Rcd. at 6593 ("[A]n action taken for the benefit of a seller by a third-party retailer, without more, is [not] sufficient to trigger the liability."). Nor do mailed "do-not-call requests" plausibly show that Mutual of Omaha knew of, and affirmatively assented to, a specific independent marketer's unlawful calling, particularly where the Complaint alleges the marketers spoofed their numbers and concealed their identities. These are the "threadbare recitals" and "conclusory statements" *Iqbal* requires the Court to disregard. 556 U.S. at 678. And the Complaint's boilerplate willfulness allegations cannot bridge that gap. Each count repeats, in identical terms, that "[t]he Defendants' actions were willful and wanton" and on that

basis demands treble damages. *See, e.g.*, Compl. ¶¶ 117, 127, 136, 143. But a "willful or knowing" violation, *see* 47 U.S.C. § 227(b)(3), (c)(5), turns on the very knowledge that ratification requires, and Mutual of Omaha cannot have acted willfully or knowingly through calls it neither placed nor knew about. Under any agency theory, Plaintiff's Complaint falls short.

**C. The Complaint Impermissibly Groups the Two Defendants Together.**

The Complaint pleads every count against "the Defendants" jointly and demands "no fewer than fifty (50)" TCPA violations and "one hundred (100)" WCPA violations even though its own chart shows the marketers overwhelmingly pitched and sold Aetna policies and produced only two Mutual of Omaha policies (calls 17 and 18). Compl. ¶¶ 44–49, 115, 134, 193. That is impermissible group pleading. The Ninth Circuit recently reaffirmed that a complaint asserting multiple discrete claims against multiple defendants without identifying who did what is "classic shotgun pleading" that leaves "Defendants, the district court, and us to decipher the details," and is subject to dismissal under Rule 8. *Gibson v. City of Portland*, 165 F.4th 1265, 1271, 1291–93 (9th Cir. 2026); *accord Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (rejecting "everyone did everything" allegations).

Where a complaint treats the defendants as an "undifferentiated mass" without "sufficient particularized allegations for each to satisfy pleading standards," that alone is "a basis for dismissal." *MFG Universe Corp. v. Next Gen LED, Inc.*, 2022 WL 3028081, at *2 (W.D. Wash. Aug. 1, 2022). The consequence for Mutual of Omaha is concrete in this case. A plaintiff may recover only for the calls he pled with specificity, not for additional calls supported by "the conclusory statement that they existed." *Barton*, 792 F. Supp. 3d at 1210. The chart's specific allegations against Mutual of Omaha are limited: marketers who named it (usually alongside Aetna, and often as one of dozens of carriers) and two Mutual of Omaha policies. Compl. ¶¶ 61–68 & at 6–8 (calls 17 and 18). Plaintiff's demand for the same "fifty" TCPA and "one hundred" WCPA violations from each defendant is untethered from that chart and impermissibly assumes Mutual of Omaha's liability for the predominantly Aetna-directed calls. The Court should not permit Plaintiff to recover against Mutual of Omaha beyond the conduct actually attributed to it.

To the extent Count Eleven (WCPA under RCW 19.86) sounds in fraud, Rule 9(b) independently forbids "lump[ing] multiple defendants together" and requires Plaintiff to "identify the role of each defendant." *Swartz*, 476 F.3d at 764–65.

**D. Counts Three, Four, and Five Rest on Provisions That Provide No Private Right of Action.**

The TCPA confers a private right of action only under § 227(b)(3) and § 227(c)(5). "No private right of action is granted under any other subsection of § 227." *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017).[2]

**1. Count Five (47 U.S.C. § 227(e) / 47 C.F.R. § 64.1601(e)).**

Count Five rests on the Truth in Caller ID Act, § 227(e), and its implementing rule, § 64.1601(e). Section 227(e) is enforced exclusively by the government through FCC forfeiture and state attorney-general suits; it does not create a private right of action. *See Ashland Hosp. Corp. v. SEIU, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013) (no private right under the analogous identification requirement of § 227(d)(3)); *Worsham*, 2016 WL 4592373, at *6 (caller-identification technology "does not fit neatly" within § 227(b) or (c)); *see also Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017) (finding Worsham persuasive and holding section 64.1601(e) does not create a private right of action). Because Count Five sounds in § 227(e) and is outside the two subsections Congress made privately enforceable, it should be dismissed.

**2. Counts Three and Four (47 C.F.R. § 64.1200(d)).**

Mutual of Omaha presses this ground in the alternative and to preserve it. Counts Three and Four rest on § 64.1200(d), which governs a telemarketer's company-specific do-not-call procedures and in-call identification—requirements that implement § 227(d)'s "technical and procedural standards," for which Congress created no private right of action. *See Worsham*, 2016 WL 4592373, at *5–6. Section 64.1200(d)(4) in particular tracks the § 227(d)(3) identification rule

[2] To the extent Counts III and V rest solely on the form of caller-identification information, rather than any concrete harm Plaintiff suffered from a call, they independently fail for lack of Article III standing: "bare procedural violations, divorced from any concrete harm," will not support suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021).

reinforcing that neither count is privately enforceable. The question is unsettled—a growing line of authority treats § 64.1200(d) as a § 227(c) privacy regulation that does carry a private right. *See, e.g., Charvat v. NMP, LLC*, 656 F.3d 440, 448–49 (6th Cir. 2011); *Van Baalen v. Mutual of Omaha Insurance Co.*, 729 F. Supp. 3d 1239, 1252–53 (D.N.M. 2024), which held § 64.1200(d) was "promulgated under" § 227(c) "rather than under" § 227(d) and therefore "creates a private right of action." Neither the Ninth Circuit nor this District has resolved the question. But the better reading, given the rule's roots in § 227(d)'s procedural standards, is that § 64.1200(d) affords no private right, and Counts Three and Four should be dismissed accordingly. *Worsham*, 2016 WL 4592373, at *5–6.

**E. Count Eleven (WCPA) Fails as Derivative and for Want of Injury to Business or Property and Causation.**

Count Eleven is a *per se* WCPA claim predicated on the alleged WTSA and WADAD violations. RCW 80.36.390(12). It is therefore entirely derivative: a *per se* claim requires "the existence of a pertinent statute and its violation," so if the predicate counts are dismissed, the WCPA count falls with them. *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1175 (W.D. Wash. 2014).

Even if a predicate survived, Count Eleven independently fails. A private WCPA claim requires all five *Hangman Ridge* elements, and "failure to satisfy even one element is fatal." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161 (W.D. Wash. 2017); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784–85 (1986). These elements include: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge*, 105 Wash. 2d at 784–85. A *per se* violation, RCW 80.36.390(12), supplies at most the first three elements; Plaintiff must still independently plead the fourth and fifth, and he pleads neither.

Plaintiff alleges no injury to business or property. He alleges only that he received "unwanted solicitation calls," Compl. ¶ 26, and, in identical boilerplate closing each count, that he

"has been damaged and injured as a result of these actions," (*e.g.*, Compl. ¶¶ 126, 135, 142), without identifying any pecuniary loss or any harm to property at all. Those are precisely the harms Washington law holds non-cognizable under the WCPA. The court in *Gragg v. Orange Cab Co.* dismissed a materially identical telephone-solicitation WCPA claim because the asserted harms were not injuries to business or property: an "invasion of privacy is a 'personal' injury, rather than a 'business or property' injury;" "aggravation and annoyance" are not recoverable; the "infinitesimal, fleeting loss of electronic storage space" from a call is not a pecuniary loss; and a claimed burden on the cell-phone network is "far beyond speculative." 942 F. Supp. 2d 1111, 1118–20 (W.D. Wash. 2013). Plaintiff's allegations are indistinguishable, and Count Eleven fails at the fourth element.

Plaintiff also cannot plead but-for causation. The WCPA reaches only injury caused by the unfair or deceptive quality of the challenged conduct. *See Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 320–22 (2020). To the extent Plaintiff's theory rests on the callers' alleged deception through use of fake names and misleading caller-ID information, the annoyance he describes flowed from the calls themselves, not from how the callers identified (or misidentified) themselves. By his own account he would have received, and been equally bothered by, the same solicitation calls had every caller truthfully announced, "Mutual of Omaha" and transmitted an accurate caller ID. The alleged deception therefore caused no distinct, cognizable injury, and but for it Plaintiff would stand in exactly the same position. Count Eleven should be dismissed.

### F. Count Twelve (Injunctive Relief) Fails Because It Is a Remedy, Not a Cause of Action.

Washington recognizes no freestanding claim for injunctive relief. Instead, "an injunction is a remedy, not an independent cause of action." *Markoff v. Puget Sound Energy, Inc.*, 9 Wash. App. 2d 833, 851 (2019). Federal courts in this District agree. *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1316 (W.D. Wash. 2021) (same); *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020). Count Twelve must therefore be dismissed.

### G. In the Alternative, Even If Any Call Is Attributed to Mutual of Omaha, the

**Established Business Relationship Defeats the National Do-Not-Call Claim (Count Two).**

Mutual of Omaha placed none of these calls, and the agency defects above dispose of every count. But even if the Court were to attribute a charted call to Mutual of Omaha, the national do-not-call count (Count Two) fails on an independent ground apparent from documents embraced by the Complaint: when the calls were placed, Plaintiff was Mutual of Omaha's own paying customer.

Count Two alleges that Mutual of Omaha called Plaintiff's telephone "without invitation or consent." Compl. ¶¶ 121–22. The Court may test that allegation against documents the Complaint incorporates by reference or on which it necessarily relies, which are not matters outside the pleadings. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *accord Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (records reflecting the parties' relationship are "embraced by the complaint" and may be considered to refute a TCPA no-consent allegation, even where they contradict it). Plaintiff's § 227(c) claim arises out of his dealings with Mutual of Omaha, and Mutual of Omaha's records of those dealings are properly before the Court. They show that Plaintiff applied for and purchased Mutual of Omaha dental coverage in July 2025, he gave Mutual of Omaha the very cellular number he now says was called, and he remained a paying policyholder throughout the charted-call period. Peterson Decl. ¶¶ 14–15 & Ex. A. Considered alongside the Complaint, those embraced records present "some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

The national-do-not-call prohibition does not reach calls to a person with whom the seller has an established business relationship—that is, one formed by a "purchase or transaction . . . within the eighteen (18) months immediately preceding" the call. 47 C.F.R. § 64.1200(f)(5). Plaintiff's July 2025 dental purchase falls within that window for every charted call, and the policy remained in force throughout. The do-not-call counts therefore fail as to any call attributable to Mutual of

Omaha that preceded Plaintiff's November 18, 2025[3] do-not-call request to Mutual of Omaha, which terminated the relationship prospectively for do-not-call purposes. *See Cubbage v. Talbots, Inc.*, 2010 WL 2710628, at *3 (W.D. Wash. July 7, 2010) (finding EBR where plaintiff's wife purchased Defendants' product within eighteen months prior to the alleged call). Plaintiff was Mutual of Omaha's own paying customer—and gave Mutual of Omaha the very number he now sues over—when each charted call was placed. The established business relationship therefore bars Count Two as to every call preceding his November 2025 do-not-call request, and the claim should be dismissed to that extent.[4]

## V. CONCLUSION

For the foregoing reasons, Mutual of Omaha respectfully requests that the Court dismiss the Complaint against it in its entirety. Because the personal jurisdiction and core pleading defects cannot be cured by amendment as to Mutual of Omaha, dismissal should be with prejudice.

DATED: July 1, 2026

*<u>/s/ Mallory L.B. Satre</u>*

**SNELL & WILMER LLP**
Mallory L.B. Satre, WSBA #50194
msatre@swlaw.com
Benjamin C. Woodruff, WSBA #56618
bwoodruff@swlaw.com

**WATSTEIN TEREPKA LLP**
Patrick J. Fitzgerald, WSBA #62484
pfitzgerald@wtlaw.com
Jenna S. Schneider (*pro hac vice*)
jschneider@wtlaw.com
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309

*Counsel for Defendant Mutual of Omaha Insurance Company*

[3] Plaintiff's chart pleads the first do-not-call request to Mutual of Omaha was sent on November 18, 2026 (11/18/2026). *See* Compl., Ex. 1. Mutual of Omaha treats this as a scrivener's error.

[4] Nine of the Mutual of Omaha-referenced calls predate that request—calls 1–4, 6–9, and 15.

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 6,521 words, in compliance with Local Civil Rule 7(e)(4).

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I caused to be served a courtesy copy of the foregoing via email, and electronically filed the foregoing via the Clerk of Court using the CM/ECF system which will send notifications of such filing to the following:

Peter Schneider
Northwest Debt Resolution, LLC
10900 4th Street, Suite 2300
Bellevue, WA 98004
Peter@nwdebtresolution.com

*Counsel for Plaintiff*

Mark S. Eisen
Benesch Law
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
meisen@beneschlaw.com

*Counsel for Defendant*
*Aetna Health and Life Insurance Company*

DATED: July 1, 2026

*/s/ Mallory L.B. Satre*
Mallory L.B. Satre

*Counsel for Defendant Mutual of Omaha Insurance Company*