HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RON LITTMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | NO. 3:26-cv-05538-TMC<br><br>PLAINTIFF'S RESPONSE TO AETNA HEALTH AND LIFE INSURANCE COMPANY'S MOTIONS TO DISMISS<br><br>NOTE FOR MOTION: 7/29/26 |

## I. INTRODUCTION

Defendant Aetna Health and Life Insurance Company ("AHLIC") asks this Court to dismiss it from this case on the theory that it is a stranger to the telemarketing campaign described in the Plaintiff's Complaint, even though callers repeatedly identified "Aetna" as the entity on whose behalf they were calling, and even though Ron Littman purchased two insurance policies described on those calls as Aetna policies, was charged premiums for them, and had those premiums withdrawn directly from his bank account by Aetna.

AHLIC's motion rests entirely on a single declaration from an employee of its parent corporation, CVS Health Corporation, without meaningful elaboration, that AHLIC did not



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

make the calls, does not issue the specific policy numbers at issue, and has no record of any anything outlined in the Plaintiff's Complaint.

The Declaration of Lori Rodman admits that AHLIC does not direct its telemarketing agents to abstain from making illegal outbound calls to consumers which is the crux of the issue in this lawsuit. AHLIC knew or should have known its agents were harassing Mr. Littman, but it refused to stop its agents from making the unwanted calls. AHLIC cannot turn a blind eye to the actions of its telemarkting agents.

For these reasons set forth below, AHLIC's motion should be denied, or, in the alternative, Plaintiff be allowed to amend his Complaint and/or the decision on the motion should be deferred pending limited jurisdictional discovery.

**Factual background**

Plaintiff Ron Littman is a Pierce County, Washington resident who, for approximately six months, received a steady stream of unwanted telemarketing calls pitching final expense insurance. Dkt. 1-1 ¶¶ 11, 34. Mr. Littman's telephone number was registered on the National Do Not Call Registry more than thirty days before the calls at issue began, and he never consented to receive telemarketing calls from any Defendant. *Id.* ¶¶ 24–25.

The calls followed a consistent pattern. An artificial or pre-recorded voice played an announcement and then transferred the call to a live agent, who used a generic, non-existent business name, such as "U.S. Funeral Expenses," "American Benefits," or "Healthcare Benefits" while representing that the call was being made on behalf of Aetna. *Id.* ¶¶ 28–34, 44–49. At least twenty-six such telemarketing calls were made to Mr. Littman's Washington cell phone number, 253-604-9364, between 8/11/25 and 2/20/26, on Aetna's behalf. *Id.* ¶ 34. Dkt. 29 ¶ 4.

Mr. Littman told these telemarketers he doesn't want or need their services or products and repeatedly demanded they stop calling. All to no avail. Frustrated, he tried an entirely



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

different approach; identifying which company these telemarketers were calling on behalf of and shutting them down at the source.

To accomplish this, during an illegal telemarketing call on 9/24/25, after AHLIC's agent quoted terms and prices for a AHLIC final expense policy, Mr. Littman purchased a policy (#ACC7091558) from AHLIC. Dkt. 1-1 ¶¶ 34, 50-51. Dkt. 29 ¶¶ 5-10

On 9/25/25 Mr. Littman used a reasonable means to demand AHLIC put an end to the illegal and unwanted telemarketing campaign it was waging against him. *Id.* ¶¶ 34, 50-51. Dkt. 30 ¶ 4, Exhibit 1.

This seemed to only embolden AHLIC and its telemarketing agents, as its campaign of telemarketing harassment against Mr. Littman continued. On 10/15/25 Mr. Littman made a second (2) demand that AHLIC cease communications with him, verbally telling one of AHLIC's telemarketing agents to put him on the do-not-call list. Dkt. 1-1 ¶ 34.

On 10/28/25 AHLIC's agents once again called him and sold him another AHLIC final expense policy (#ACC7105737). Dkt. 1-1 ¶¶ 34, 54-55. Dkt. 29 ¶¶ 11-15.

On 10/28/25 Mr. Littman, for a third (3) time, used a reasonable means to demand AHLIC put an end to the illegal and unwanted telemarketing campaign it was waging against him. This communication referenced Mr. Littman's previous 9/25/25 letter and clarified that he only purchased the second AHLIC policy so he could identify the company the telemarketers were working for, thus allowing him to demand, again, that AHLIC stop the illegal telemarketing calls being made to him. Dkt. 1-1 ¶¶ 34, 54-55. Dkt. 30 ¶ 5, Exhibit 2.

On 11/5/25 AHLIC withdrew $144.25 from Mr. Littman's bank account for charges associated with the insurance policies its telemarketing agents sold him. Dkt. 1-1 ¶¶ 34, 52. Dkt. 29 ¶ 10, Exhibit B.

On 12/8/25 Mr. Littman made a fourth (4) demand to AHLIC that it stop calling him. Dkt. 1-1 ¶ 34.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Eight days later on 12/16/25 Mr. Littman made a fifth (5) demand to AHLIC that it cease communications with him. Dkt. 1-1 ¶ 34.

On 12/30/25 AHLIC withdrew $144.25 from Mr. Littman's bank account for charges associated with the insurance policies its telemarketing agents sold him. Dkt. 1-1 ¶¶ 34, 56. Dkt. 29 ¶ 15, Exhibit C.

On 2/6/26 Mr. Littman made a sixth (6) demand to AHLIC that it stop calling him. Dkt. ¶ 34.

In all, Mr. Littman received no fewer than 26 illegal telemarketing calls from AHLIC's agents trying to sell him insurance policies. *Id.* This despite Mr. Littman having registered his phone number on the Federal Trade Commission's Do-Not-Call registry ("DCR") at least 30 days prior to the first telemarketing call being received on 8/11/25. *Id.* ¶ 24.

## II. ARGUMENTS & AUTHORITY

**Legal standard on a 12(b)(2) motion to dismiss**

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). To do so, a plaintiff "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In the absence of an evidentiary hearing or formal discovery, the plaintiff is required to make only a prima facie showing of jurisdictional facts through the submitted materials to withstand the motion to dismiss. *Gutierrez v. Amplify Energy Corp.,* 634 F. Supp. 3d 780, 785 (C.D. Cal. 2022).

"[i]f both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). Any evidentiary materials submitted on AHLIC's motion to dismiss must



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

be construed in the light most favorable to the Plaintiff and all doubts should be resolved in his favor.

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *CollegeSource, Inc.*, 653 F.3d at 1073 (citing Fed. R. Civ. P. 4(k)(1)(A). "Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits." *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015) (citing *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465, 975 P.2d 555 (1999)).

**<u>This Court has specific personal jurisdiction over AHLIC</u>**

**Declaration of Lori Rodman**

Ms. Rodman testifies that she is a Manager of Business Compliance, Medicare Supplement & Ancillary of CVS Health Corporation. Dkt. 24 ¶2. Her foundation to testify is predicated on the fact that AHLIC is owned by CVS Health Corporation. Dkt. 16.

In fact, CVS Health Corporation ("CVS") owns quite a few subsidiaries, and sells various and sundry "senior products" through the website www.aetnaseniorproducts.com. This was the website listed on the bottom of the page 17 of the first policy (#ACC7091558) AHLIC sold the Plaintiff on 9/24/25. In the bottom right-hand corner of the same page of the policy is the CVS Health logo.



| | |
|---|---|
| Questions? | Call 1-866-895-6527 or go to www.aetnaseniorproducts.com |

CVS Health.

Dkt. 29, Exhibit A.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

In fact, three names, "Aetna, Inc," "CVS Health" and "Accendo Insurance Company" were on the cover page of  the first policy (ACC7091558) AHLIC sold the Plaintiff, which was mailed to him at a Washington State address.



CVS Health.

Accendo Insurance Company
part of the CVS Health® family of companies and Aetna affiliate
PO Box 14770
Lexington, KY 40512-4770

(331) 133002853004

RON LITTMAN
4618 NW 11TH CIR
CAMAS, WA 98607-8413

CVS Health.

ACCMP06586

©2025 Aetna Inc.

062625

*Id.*

Confused? So was the Plaintiff. However, when the first payment was withdrawn from his bank account by Aetna, it was clear which entity sold the policy to him on 9/24/25.



**Payment to Aetna**
ACH Debit - Aetnaaccendo Ins
Pymt 11100002
**-$144.25**

**Transaction Date** (ET)
November 5, 2025
**Posted Date** (ET)
November 5, 2025
**Balance**

Dkt. 29, Exhibit B.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

And then again when funds were withdrawn for the 10/28/25 policy.




*Id.* Exhibit C.

As Ms. Rodman has been a manager at CVS Health Corporation (for 14 years) she is no doubt acutely aware of this fact. To the extend AHLIC's Reply argues the Plaintiff named the wrong tentacle of the many arms of the CVS Health Corporation, Plaintiff's arguments regarding vicarious liability vis a vis apparent authority would still bind AHLIC.

Simply put, AHLIC's agents can't invoke its name when selling products, nor can AHLIC plaster its name all over policy documents sent to consumers, or direct them to a website called www.aetnaseniorproducts.com, or collect policy payments directly from consumers, and then claim it was a different associated entity that is liable.

**Legal standards to establish specific personal jurisdiction in the Ninth Circuit**

The Ninth Circuit applies a three-prong test to determine whether a defendant had sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

(3) (the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

**Purposeful direction and the effects test**

In *Barton v. Pinnacle Home Improvements LLC*, Judge Tiffany M. Cartwright applied this three prong-test in a case involving an out-of-state defendant in a TCPA action. A purposeful direction analysis is appropriate for TCPA and related state law claims because they are essentially tort claims.

Courts analyze purposeful direction under the three-part "effects test" enumerated in *Calder v. Jones*, 465 U.S. 783, 787-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under the effects test, a plaintiff must show that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

**Effects test - AHLIC's intentional acts directed at Washington State residents.**

Plaintiff incorporates his sections below outlining AHLIC's vicarious liability for the actions of its telemarketer agents into this analysis. AHLIC's telemarking agents repeatedly called the Plaintiff's phone number and peddled its products. The Plaintiffs phone number, 253-604-9365, has a Washington State area code.

District courts in the Ninth Circuit have determined that an area code associated with the forum state gives a caller reason to know the call or message would have an impact in that state. *See, e.g., Jackson v. Euphoria Wellness, LLC*, No. 3:20-CV-03297-CRB, 2020 U.S. Dist. LEXIS 163567, 2020 WL 5366419, at *5-6 (N.D. Cal. Sept. 8, 2020) *See also Moser v. Health Ins. Innovations, Inc.*, 2018 U.S. Dist. LEXIS 3237, 2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018) ("The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code.").



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Thus, all 26 (known) telemarketing calls by AHLIC's telemarking agents to the Plaintiff were intentional acts, imputed to AHLIC vis a vis vicarious liability, directed at the Plaintiff's Washington State phone number.

In addition to having a Washington State area code, Plaintiff caused AHLIC to be notified, via mail, that he did not want to receive phone calls and to put him on the do not call list. These letters also contained his Washington State area code phone number.

AHLIC directed its telemarketing agents to telemarket to Washington State residents and "consummated" at least four transactions (two (2) sales of policies and two (2) withdraws from the Plaintiff's bank account) set up by its telemarking agents.

Furthermore, AHLIC was aware that the Plaintiff lived in Washington and it issued and mailed two policies to the Plaintiff at Washington addresses.

Unlike *Barton v. Pinnacle Home Improvements LLC*, AHLIC knew from the jump that its telemarketing agents were telemarketing to a Washington Resident when they called the Plaintiff. All three prongs of the purposeful direction *Calder* test are satisfied, and the Plaintiff has met the first prong of the specific jurisdiction test.

**The Plaintiff's claims arise out of AHLIC's activities in Washington.**

The second prong of the specific jurisdiction test requires a court determine whether the claims at issue arose out of or relate to AHLIC's forum contacts. *Yamashita v. LG Chem, Ltd.,* 62 F.4th 496, 504 (9th Cir. 2023*)*. "[F]or a claim to arise out of a defendant's forum contacts requires" a showing of but-for causation. *Id.* at 504-06.

AHLIC's contacts with Washington are the but-for cause of the Plaintiff's claims. Had AHLIC not had its agents telemarket to the Plaintiff in Washington, he would not have claims against it under the TCPA or state law.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**Exercising jurisdiction over AHLIC is reasonable.**

Because the Plaintiff has established the first two prongs, the burden shifts to AHLIC to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc.*, 653 F.3d at 1076.

The Plaintiff has established this element as he has proven that AHLIC and its telemarketing agents were aware that the Plaintiff lived in Washington when they placed telemarketing calls to his 253 area code number, when AHLIC issued and mailed the first insurance policy to the Plaintiff at a Washington address, and when AHLIC withdrew funds from the Plaintiff's Washington bank account.

**Legal standard on a 12(b)(6) motion to dismiss**

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**<u>AHLIC is vicariously liable for the illegal telemarketing of its agents</u>**

The Telephone Consumer Protection Act ("TCPA") prohibits making telemarketing calls to residential telephone subscribers who have registered their telephone numbers on the federal do not call ("DNC") registry. 47 U.S.C. § 227(c). Persons who have registered their numbers on the DNC registry and receive more than one telemarketing call in a 12-month period, "by or on behalf of the same entity" have a private right of action. 47 U.S.C. § 227(c)(5).

For a call to fall under the TCPA, the caller must either (1) directly make the call, or (2) have an agency relationship with the person or entity that made the call. *See Thomas v. Taco Bell Corp*., 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("There are two potential theories of liability [for a TCPA violation]: (1) direct liability; and (2) vicarious liability.").

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014), *aff'd sub nom. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016).

Vicarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification. *Jones v. Royal Administration Servs., Inc*., 887 F.3d 443, 449 (9th Cir. 2018). A plaintiff need not separately plead a particular theory of vicarious TCPA liability to proceed on that theory. *Cf. McCurley v. Royal Seas Cruises, Inc*., No. 21-55099, 2022 WL 1012471, at *1 (9th Cir. April 5, 2022) (concluding that plaintiffs did not waive an apparent authority theory of vicarious TCPA liability and observing that "plaintiffs did not waive their vicarious liability arguments based on a failure to specifically allege them in the consolidated complaint").



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**Ratification**

Who else but an authorized AHLIC agent can quote AHLIC insurance policy terms and prices, then cause to be issued (by AHLIC) two AHLIC insurance policies, complete with unique policy numbers?

The Plaintiff's Complaint alleges that he received multiple illegal telemarketing calls from AHLIC agents and that he subsequently purchased AHLIC insurance policies from those agents.

AHLIC ratified the actions of its telemarketing agent on 9/24/25 when it issued AHLIC policy (#ACC7091558) and subsequently withdrew funds for said policy from the Plaintiff's bank account a few weeks later. Remarkably, AHLIC sold the Plaintiff another policy (#ACC7105737) just over four weeks later.

In *Henderson v. United Student Aid Funds, Inc*, the Ninth Circuit dealt with a TCPA case in which a Plaintiff alleged the original creditor student loan lender was a principal of and thus vicariously liable for the actions of five 3rd party debt collectors. The original creditor (USA Funds) hired a loan servicer (Navient) to service its student loan portfolio. Navient in turn contracted with five collection agencies to collect on delinquent student loan accounts. The Plaintiff pleaded vicarious liability on USA Funds for TCPA violations by the five collectors, even though the record established USA Funds had no contract with the five collection agencies.

USA Funds moved for summary judgment on the issue, and the court did an extensive analysis of vicarious liability of a principal based on ratification, ultimately adopting many positions of the Restatement (Third) of Agency, holding:

> "There are two ways to ratify a third party's acts. The first is by a "knowing acceptance of the benefit." To prove this form of ratification, there must be "an objectively or externally observable indication . . . that the principal has exercised choice and has consented" to the acts of the purported agent. Restatement § 4.01 cmt. d. That means that the principal must have "knowledge of material facts," also described as "actual knowledge." Restatement § 4.06. The second way a principal can ratify the acts of a third party is through "willful ignorance." Under



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

> the "willful ignorance" theory, the principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking." Restatement § 4.01 cmt. b. In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway."

*Henderson v. United Student Aid Funds, Inc*., 918 F.3d 1068, 1073-1074 (9th Cir. 2019).

The court went onto overturn the district court's order granting summary judgment on the issue, holding:

> "USA Funds argues it could not have ratified the actions of the debt collectors because there is no agency relationship between it and the debt collectors. We disagree. Restatement § 4.01 cmt. b makes clear that, in most jurisdictions, ratification may create an agency relationship when none existed before if the acts are "done by an actor . . . who is not an agent but pretends to be."

*Id.* at 1074.

In its motion to dismiss, AHLIC cites *Kristensen v. Credit Payment Servs. Inc*, for its position that because AHLIC didn't directly place the telemarketing calls to the Plaintiff, it can only be liable if the calls were from its agents.

However, *Kristensen* certainly didn't hold that a party needs actual notice of its agents TCPA violations to be vicariously liable for those actions. *Henderson* even referenced *Kristensen*, remarking:

> "Unlike the texting publisher in *Kristensen*, here, a reasonable jury could find that the debt collectors pretended and demonstrably assumed to act as USA Funds' agents. *See* Restatement § 4.01 cmt b. As previously described, the debt collectors collected on unpaid loans by calling the student-borrowers. The collectors told the borrowers that they were calling about a loan owned by USA Funds. Without needing USA Funds' approval, the collectors negotiated, deferred, and took payments on USA Funds' behalf. In *Kristensen*, the texting publisher did not pretend to be the lenders' agent because the publisher did not identify itself in the text message."

*Henderson,* 918 F.3d at 1074.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Like the 3rd party debt collectors in *Henderson*, AHLIC's agents identified themselves as agents of AHLIC, offering AHLIC policies they could sell to the Plaintiff, quoted prices, negotiated terms, and sold the Plaintiff a final expense insurance policy from AHLIC on two different occasions. Like *Henderson*, a reasonable jury could find that the agents that sold the Plaintiff the AHLIC policies, "pretended and demonstrably assumed to act as [AHLIC's] agents."

Unlike *Henderson*, AHLIC's agents didn't collect payment for it. Instead, AHLIC took money directly from the Plaintiff's account four weeks after the first AHLIC policy was sold to the Plaintiff and two months after the second AHLIC policy was sold to the Plaintiff.

AHLIC had to know about the facts surrounding the issuance of both policies, as it was the entity that issued them. Insurance policies don't issue themselves, and it's not an impermissible leap to infer that AHLIC gave the agents that sold the two policies to the Plaintiff access to whatever system it has in place to generate quotes, terms, and ultimately commence the policy issuance process. There is no other way AHLIC's agents could sell AHLIC products to consumers.

AHLIC had to know that its telemarketing agents used aggressive and illegal telemarking tactics because the Plaintiff told AHLIC so on no fewer than six (6) occasions. AHLIC ratified the actions of its aggressive telemarketing agents by issuance of the AHLIC policies, particularly the second AHLIC policy that was issued weeks after the Plaintiff explicitly told AHLIC to cease its illegal telemarketing campaign against him.

These were the "objectively or externally observable indication . . . that the principal has exercised choice and has consented" to the actions of its agents that the restatement and *Henderson* speak of. AHLIC had to have "knowledge of material facts," also described as "actual knowledge" of the facts as it issued both insurance policies. AHLIC's collection of



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

payment on those policies was the "knowing acceptance of the benefit" *Henderson* also speaks of. As was their failure to put a stop to the illegal telemarketing campaign. For AHLIC, the payment of premiums derived from the illegal telemarketing campaigns was just too lucrative to put a stop to it.

Even if this Court were to assume, arguendo, that AHLIC had no preexisting relationship with its telemarketing agents that sold the Plaintiff the two AHLIC insurance policies, *Henderson* shows us that such agency can still arise under the "willful ignorance" theory, a principal may not know the material facts (of the agent's actions), but may none the less ratify the actions of a 3rd party by ratifying the 3rd parties' conduct, despite lacking awareness of the underlying facts.

The *Henderson* holding was recently affirmed by this Court in *Barton v. Am. Family Life Assurance Co. of Columbus*. In *Barton,* Nathen Barton sued an insurance company alleging TCPA violations by its agents. *Barton* also dealt with agents of an insurance company telemarketing final expense insurance to a consumer who had registered his phone number on the national DNC registry.

Like the Plaintiff in this matter, Mr. Barton, trying to figure out who was behind the illegal telemarketing calls, purchased policies from the telemarketer. Like the Plaintiff in this matter, Mr. Barton repeatedly used reasonable means to demand the issuer of those policies stop telemarketing to him. Like the Plaintiff in this matter, Mr. Barton also repeatedly told the insurance company and its agents to stop calling him.

Like the Plaintiff has alleged in this matter, Mr. Barton alleged that the insurance company gave their agents access to their name to generate sales and access to their computer system for pricing and issuing policies. Like the Plaintiff has alleged in this matter, Mr. Barton alleged that the telemarketers would hide their phone number with "spoofed" numbers.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Like in this matter, the insurance company Defendant in *Barton* moved to dismiss, alleging that the Plaintiff had failed to adequately allege facts supporting his argument of vicarious liability for the agents' actions.

On 1/22/26 the Honorable Tiffany M. Cartwright ruled:

> "The Court finds that Mr. Barton has sufficiently alleged vicarious liability between Aflac and the telemarketers to survive a motion to dismiss pursuant to Rule 12(b)(6). At the pleadings stage Mr. Barton is not required to develop all the facts surrounding the agency relationship, nor is he required to plead a particular vicarious liability theory to proceed on that theory.
>
> *Barton v. Am. Family Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 LX 75171, at *10 (W.D. Wash. Jan. 22, 2026).

Specifically (in terms of ratification) this Court ruled:

> "Mr. Barton also alleges that he contacted counsel for Aflac to stop the unwanted calls on March 4, 2025, counsel informed Aflac, and he received another call selling Aflac products on June 16, 2025. Dkt. 1-2 ¶¶ 236-39, 246. This supports a theory of ratification as it is "conduct that justifies a reasonable assumption that [Aflac] consents" to the telemarketer's conduct.
>
> *Id.*

Like Mr. Barton, the Plaintiff used reasonable means to communicate his demands directly to AHLIC that it cease its illegal telemarketing campaign against him. In fact, he did so on six (6) separate occasions. As was the case with Mr. Barton, AHLIC ended up selling the Plaintiff a second policy. This despite over four weeks having elapsed since the Plaintiff made his initial written demand to AHLIC that it cease trying to sell him its products.

As such, AHLIC's motion to dismiss on the issue of vicarious liability should be denied. The Complaint adequately alleges ratification and draws a litany of parallels to a case that survived a motion to dismiss in this Court just five months ago.



NW DR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**Apparent Authority**

In the interest of brevity, the Plaintiff incorporates by reference all the arguments made in the preceding section dealing with ratification. Apparent authority allows liability to attach to a principal based on manifestations of a principal. In that respect, apparent authority is, arguably, the easiest mechanism by which vicarious liability can attach to a principal.

Apparent authority exists, "when a third party reasonably believes the [agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022).

Naming the entity of the products it is peddling (AHLIC), quoting terms and prices of those (AHLIC) products, and ultimately selling a AHLIC policy certainly establishes that the Plaintiff had reasonable belief that the agents who called him were acting on behalf of AHLIC.

The Plaintiff receiving policies with Aetna's name printed all over it, and those materials directing the Plaintiff to aetnaseniorproducts.com are the kinds of representations made by a principal that apparent authority is predicated on.

In *Barton*, Judge Cartwright ruled:

> "Mr. Barton alleges that Aflac gave the telemarketers "access to their computer systems for pricing and uploading customers [and] permission to use their business names," and continued "to do business with [t]he [t]elemarketers even as they received complaints of unwanted telemarketing." Dkt. 1-2 ¶ 67. He also alleges that the telemarketer sold him an actual Aflac policy, and he got the telemarketer's information from Aflac. *Id.* ¶¶ 231-32. This supports a theory of apparent authority, as one could reasonably believe that the telemarketers had the authority to act on behalf of Aflac."

*Barton,* LX 75171 at *10.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

The Plaintiff has made identical allegations in his Complaint against AHLIC. As such, AHLIC's motion to dismiss on the issue of vicarious liability should be denied on the basis of apparent authority.

## III. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court deny AHLIC's motions to dismiss in their entirety. No discovery has commenced in this matter, and the Plaintiff has certainly established a prima facie showing that this court has personal jurisdiction over AHLIC. Should this Court grant AHLIC's motions, in part or in whole, the Plaintiff respectfully requests this Court grant him leave to amend his Complaint and/or the decision on the motion should be deferred pending limited jurisdictional discovery.

DATED July 22, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

DECLARATION OF COMPLIANCE

The Plaintiff certifies this Response contains 5,075 words in compliance with LCR 7(e)(4).

DATED July 22, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

DECLARATION OF SERVICE

I, Peter Schneider, am a resident of the State of Washington, over the age of 18 and competent to make this declaration herein. On the date indicated below, I served the foregoing document to the following recipients in the manner described below:

- ☐ USPS first class mail
- ☐ E-mail
- ☐ Facsimile
- ☒ Other – ECF e-service

Mark S. Eisen

Patrick J Fitzgerald

Mallory L. Satre

Jenna S. Schneider

John C. Versnel, III

Maxwell A Wesemann

Benjamin C Woodruff

DATED July 22, 2026.

/s/ Peter Schneider
Peter Schneider



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015