HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RON LITTMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | NO. 3:26-cv-05538-TMC<br><br>PLAINTIFF'S RESPONSE MUTUAL OF OMAHA INSURANCE COMPANY'S MOTIONS TO DISMISS<br><br>NOTE FOR MOTION: 7/29/26 |

## I. INTRODUCTION

For as long as he can remember, Ron Littman has been harassed by telemarketers pitching goods and services he doesn't need or want. Amongst the most invasive and unsettling for him are telemarketing calls peddling final expense insurance.

Mr. Littman has told these telemarketers he doesn't want or need their services or products and repeatedly demanded they stop calling. All to no avail. Frustrated, he tried an entirely different approach; identifying which company these telemarketers were calling on behalf of and shutting them down at the source.

Mr. Littman is a Pierce County, Washington resident who, for approximately six months, received a steady stream of unwanted telemarketing calls pitching final expense



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

insurance. Dkt. 1-1 ¶ 34. Mr. Littman's telephone number was registered on the National Do Not Call Registry more than thirty days before the calls at issue began, and he never consented to receive telemarketing calls from any Defendant. *Id.* ¶¶ 24–25.

The calls followed a consistent pattern. An artificial or pre-recorded voice would play an announcement and then transferred the call to a live agent, who used a generic, non-existent business name, such as "U.S. Funeral Expenses," "American Benefits," or "Healthcare Benefits" while representing that the call was being made on behalf of Mutual of Omaha ("MOO"). *Id.* ¶¶ 28–34, 44–49. At least twenty-six such telemarking calls were made to Mr. Littman's Washington cell phone number, 253-604-9364, between 8/11/25 and 2/20/26, on MOO's behalf. *Id.* ¶ 34. Dkt. 32 ¶ 4.

**Factual background**

During an illegal telemarketing solicitation call on 12/23/25, after MOO's agent quoted terms and prices for a MOO final expense policy, Mr. Littman purchased a policy (#BU6302298) from MOO. Dkt. 1-1 ¶¶ 34, 61-68. Dkt. 32 ¶¶ 5-9.

On 12/24/25 Mr. Littman used a reasonable means to demand MOO put an end to the illegal and unwanted telemarketing campaign it was waging against him. This written communication clarified that Mr. Littman only purchased the MOO policy so he could identify the insurance company the telemarketers were working for, thus allowing him to demand MOO stop the illegal telemarketing calls being made to him. Mr. Littman advised MOO he did not want the policy and asked that MOO not take his money. Dkt. 1.1 ¶¶ 34, 61-68. Dkt. 33 ¶ 4, Exhibit 1.

This seemed to only embolden MOO and its agents, as its campaign of telemarketing harassment against Mr. Littman continued. On 1/7/26 MOO's agents once again called him and sold him another MOO final expense policy (#UR6474446). Dkt. 1-1 ¶¶ 34, 61-68. Dkt. 32 ¶¶ 11-16.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

On 1/8/26 Mr. Littman *once again* used a reasonable means to demand MOO put an end to the illegal and unwanted telemarketing campaign it was waging against him. This communication clarified that Mr. Littman only purchased the second MOO policy so he could identify the insurance company the telemarketers were working for, thus allowing him to demand, again, that MOO stop the illegal telemarketing calls being made to him. Mr. Littman advised MOO he did not want the policy and asked that MOO not take his money. Dkt. 1-1 ¶¶ 34, 61-68. Dkt. 33 ¶ 5, Exhibit 2.

On 1/12/26 MOO withdrew $53.04 from Mr. Littman's bank account for charges associated with the insurance policy its telemarketing agent sold Mr. Littman. Dkt. 1-1 ¶¶ 34, 61-68. Dkt. 32 ¶ 10, Exhibit B.

On 2/3/26 MOO notified Mr. Littman that it would withdraw another $53.04 and did withdraw $53.04 from Mr. Littman's bank account for charges associated with the insurance policies its telemarketing agents sold Mr. Littman. Dkt. 1-1 ¶¶ 34, 61-68. Dkt. 32 ¶ 17, Exhibit C.

MOO's illegal and unwanted telemarketing campaign against Mr. Littman continued. On 2/6/26 Mr. Littman used a reasonable means, *for a third time*, to demand MOO put an end to the illegal and unwanted telemarketing campaign it was waging against him. Dkt. 1-1 ¶¶ 34, 61-68. Dkt. 33 ¶ 6, Exhibit 3.

On 2/17/26 and 2/18/26 Mr. Littman used a reasonable means, *for a fourth and fifth time*, to demand MOO put an end to the illegal and unwanted telemarketing campaign it was waging against him. Dkt. 1-1 ¶ 34.

In all, Mr. Littman received no fewer than 26 illegal telemarketing calls from MOO's agents trying to sell him insurance policies. *Id.* ¶ 34. This despite Mr. Littman having registered his phone number on the Federal Trade Commission's Do-Not-Call registry ("DCR") at least 30 days prior to the first telemarketing call being received on 8/11/25. *Id.* ¶¶ 24 & 34.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

## II. LCR 7(g) PRELIMINARY MOTIONS TO STRIKE

The Plaintiff moves to strike paragraph 15 from the Declaration of Maha Peterson. Dkt. 26.

**Fed. R. Evid. 803(6) (Business Records Exception)**

A core predicate of the business records exception is that it permits admission of a ***record*** of an act, event, condition, opinion, or diagnosis that would otherwise be excluded by the hearsay rule. The business records exception does not allow a records custodian to, allegedly, review records and then testify about their contents.

A records custodian's testimony about said record is foundation testimony. It authenticates the record and establishes the conditions for admissibility. It doesn't substitute for the record; it's the vehicle for getting the record itself admitted.

Ms. Peterson's testimony in paragraph 15 of her declaration are out-of-court-derived assertions being offered for their truth, and don't independently satisfy any hearsay exception just because the underlying record would.

**Fed. R. Evid. 1002 (Best Evidence Rule)**

Under Fed. R. Evid. 1002, when the contents of writing or electronic records are sought to be proved, the proponent must produce the original or an acceptable duplicate. The rule applies directly when a witness seeks to testify about the contents of a writing, recording, or photograph without producing the physical item itself.

For the reasons above, paragraph 15 of Ms. Peterson's declaration should be stricken from the record.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

# III. ARGUMENTS & AUTHORITY

**Legal standard on a 12(b)(2) motion to dismiss**

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). To do so, a plaintiff "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In the absence of an evidentiary hearing or formal discovery, the plaintiff is required to make only a prima facie showing of jurisdictional facts through the submitted materials to withstand the motion to dismiss. *Gutierrez v. Amplify Energy Corp.,* 634 F. Supp. 3d 780, 785 (C.D. Cal. 2022).

"[i]f both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). Any evidentiary materials submitted on MOO's motion to dismiss must be construed in the light most favorable to the Plaintiff and all doubts should be resolved in his favor.

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *CollegeSource, Inc.*, 653 F.3d at 1073 (citing Fed. R. Civ. P. 4(k)(1)(A). "Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits." *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015) (citing *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465, 975 P.2d 555 (1999)).



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**<u>This Court has specific personal jurisdiction over MOO</u>**

It's undisputed that MOO sold the Plaintiff insurance policies through its telemarketing agents. The Plaintiff has provided a copy of the first page of one such policy in his declaration.

Underwritten by
United of Omaha Life Insurance Company
A Mutual of Omaha Company
3300 Mutual of Omaha Plaza | Omaha, NE 68175

JANUARY 10, 2026

RON LITTMAN
6022 HANNAH PIERCE W RD
APT B
UNIVERSITY PL WA 98467

Dear RON LITTMAN:

Congratulations on the purchase of your new life insurance policy from United of Omaha Life Insurance Company. You have made the right decision to protect the people who are important to you. Thanks to you, their future and your dreams are now secure.

We are privileged that you have chosen United of Omaha for your life insurance needs. We appreciate the confidence and trust that you have placed in our company, and we are dedicated to providing you with superior service. You can be certain that you have made the right choice.

Since 1926, United of Omaha Life insurance Company, a wholly owned subsidiary of Mutual of Omaha Insurance Company, has been the choice for solid, secure protection. Our strong financial strength and stability demonstrate that we will be there for you when you need us.

Dkt. 32, Exhibit A.

The Plaintiff has produced proof that funds were withdrawn from his bank account to pay for such policies.




Dkt. 32, Exhibit B.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**Legal standards to establish specific personal jurisdiction in the Ninth Circuit**

The Ninth Circuit applies a three-prong test to determine whether a defendant had sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) (the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

**Purposeful direction and the effects test**

In *Barton v. Pinnacle Home Improvements LLC*, Judge Tiffany M. Cartwright applied this three prong-test in a case involving an out-of-state defendant in a TCPA action. A purposeful direction analysis is appropriate for TCPA and related state law claims because they are essentially tort claims.

Courts analyze purposeful direction under the three-part "effects test" enumerated in *Calder v. Jones*, 465 U.S. 783, 787-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under the effects test, a plaintiff must show that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

**Effects test – MOO's intentional acts directed at Washington State residents**

Plaintiff incorporates his sections below outlining MOO's vicarious liability for the actions of its telemarketer agents into this analysis. MOO's telemarking agents repeatedly called



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

the Plaintiff's phone number and peddled its products. The Plaintiffs phone number, 253-604-9365, has a Washington State area code.

District courts in the Ninth Circuit have determined that an area code associated with the forum state gives a caller reason to know the call or message would have an impact in that state. *See, e.g., Jackson v. Euphoria Wellness, LLC*, No. 3:20-CV-03297-CRB, 2020 U.S. Dist. LEXIS 163567, 2020 WL 5366419, at *5-6 (N.D. Cal. Sept. 8, 2020). *See also Moser v. Health Ins. Innovations, Inc.*, 2018 U.S. Dist. LEXIS 3237, 2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018) ("The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code.").

Thus, all 26 (known) telemarketing calls by MOO's telemarking agents to the Plaintiff were intentional acts, imputed to MOO vis a vis vicarious liability, directed at the Plaintiff's Washington State phone number.

In addition to having a Washington State area code, Plaintiff caused MOO to be notified, via mail, that he did not want to receive phone calls and to put him on the do not call list. These letters also contained his Washington State area code phone number and were signed "Ron in WA" and "Ron in Washington State."


...lls. Together we can silence the
...zy. Ron in Washington State.

Dkt. 33, Exhibits 1-3.

MOO directed its telemarking agents to telemarked to Washington State residents and "consummated" at least four transactions (two (2) sales of policies and two (2) withdraws from the Plaintiff's bank account) set up by its telemarking agents.

Furthermore, MOO was aware that the Plaintiff lived in Washington and it issued and mailed two policies to the Plaintiff at Washington addresses.

Unlike *Barton v. Pinnacle Home Improvements LLC*, MOO knew from the jump that its telemarketing agents were telemarketing to a Washington Resident when they called the



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Plaintiff. All three prongs of the purposeful direction *Calder* test are satisfied, and the Plaintiff has met the first prong of the specific jurisdiction test.

**The Plaintiff's claims arise out of MOO's activities in Washington.**

The second prong of the specific jurisdiction test requires a court determine whether the claims at issue arose out of or relate to MOO's forum contacts. *Yamashita v. LG Chem, Ltd.,* 62 F.4th 496, 504 (9th Cir. 2023*)*. "[F]or a claim to arise out of a defendant's forum contacts requires" a showing of but-for causation. *Id.* at 504-06.

MOO's contacts with Washington are the but-for cause of the Plaintiff's claims. Had MOO not had its agents telemarketing to the Plaintiff in Washington, he would not have claims against it under the TCPA or state law.

**Exercising jurisdiction over MOO is reasonable**

Because the Plaintiff has established the first two prongs, the burden shifts to MOO to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc.*, 653 F.3d at 1076.

The Plaintiff has established this element as he has proven that MOO and its telemarketing agents were aware that the Plaintiff lived in Washington when they placed telemarketing calls to his 253 area code number, when MOO issued and mailed the first insurance policy to the Plaintiff at a Washington address, and when MOO withdrew funds from the Plaintiff's Washington bank account.

**<u>Legal standard on a 12(b)(6) motion to dismiss</u>**

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014).

**MOO is vicariously liable for the illegal telemarketing of its agents**

The Telephone Consumer Protection Act ("TCPA") prohibits making telemarketing calls to residential telephone subscribers who have registered their telephone numbers on the federal do not call ("DNC") registry. 47 U.S.C. § 227(c). Persons who have registered their numbers on the DNC registry and receive more than one telemarketing call in a 12-month period, "by or on behalf of the same entity" have a private right of action. 47 U.S.C. § 227(c)(5).

For a call to fall under the TCPA, the caller must either (1) directly make the call, or (2) have an agency relationship with the person or entity that made the call. *See Thomas v. Taco Bell Corp*., 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("There are two potential theories of liability [for a TCPA violation]: (1) direct liability; and (2) vicarious liability.").

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014), *aff'd sub nom. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016).

Vicarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification. *Jones v. Royal Administration Servs., Inc*., 887 F.3d 443, 449 (9th Cir. 2018). A plaintiff need not separately plead a particular theory of



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

vicarious TCPA liability to proceed on that theory. *Cf. McCurley v. Royal Seas Cruises, Inc*., No. 21-55099, 2022 WL 1012471, at *1 (9th Cir. April 5, 2022) (concluding that plaintiffs did not waive an apparent authority theory of vicarious TCPA liability and observing that "plaintiffs did not waive their vicarious liability arguments based on a failure to specifically allege them in the consolidated complaint").

**Ratification**

Who else but an authorized MOO agent can quote MOO insurance policy terms and prices, then cause to be issued (by MOO) two MOO insurance policies, complete with unique policy numbers?

The Plaintiff's Complaint alleges that Ron received multiple illegal telemarketing calls from MOO agents and that he subsequently purchased MOO insurance policies from those agents.

MOO ratified the actions of its agent on 12/23/25 when it issued MOO policy (#BU0630298) and subsequently withdrew funds for said policy from Ron Littman's bank account a few weeks later. Remarkably, MOO did this again on 1/7/26. On that day, one of MOO's telemarking agents called Ron Littman, peddled MOO's insurance policy, and sold him another MOO policy (#UR6474446). This occurred almost two weeks after Ron caused to be mailed a letter to MOO's general counsel on 12/24/25 demanding MOO stop its illegal telemarketing campaign against him.

In *Henderson v. United Student Aid Funds, Inc*, the Ninth Circuit dealt with a TCPA case in which a Plaintiff alleged the original creditor student loan lender was a principal of and thus vicariously liable for the actions of five 3rd party debt collectors. The original creditor (USA Funds) hired a loan servicer (Navient) to service its student loan portfolio. Navient in turn contracted with five collection agencies to collect on delinquent student loan accounts. The



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Plaintiff pleaded vicarious liability on USA Funds for TCPA violations by the five collectors, even though the record established USA Funds had no contract with the five collection agencies.

USA Funds moved for summary judgment on the issue, and the court did an extensive analysis of vicarious liability of a principal based on ratification, ultimately adopting many positions of the Restatement (Third) of Agency, holding:

> "There are two ways to ratify a third party's acts. The first is by a "knowing acceptance of the benefit." To prove this form of ratification, there must be "an objectively or externally observable indication . . . that the principal has exercised choice and has consented" to the acts of the purported agent. Restatement § 4.01 cmt. d. That means that the principal must have "knowledge of material facts," also described as "actual knowledge." Restatement § 4.06. The second way a principal can ratify the acts of a third party is through "willful ignorance." Under the "willful ignorance" theory, the principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking." Restatement § 4.01 cmt. b. In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway."

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073-1074 (9th Cir. 2019).

The court went onto overturn the district court's order granting summary judgment on the issue, holding:

> "USA Funds argues it could not have ratified the actions of the debt collectors because there is no agency relationship between it and the debt collectors. We disagree. Restatement § 4.01 cmt. b makes clear that, in most jurisdictions, ratification may create an agency relationship when none existed before if the acts are "done by an actor . . . who is not an agent but pretends to be."

*Id.* at 1074.

In its motion to dismiss, MOO cites *Kristensen v. Credit Payment Servs. Inc*, for its assertion that because MOO didn't directly place the telemarketing calls to the Plaintiff, it can only be liable if the calls were from its agents. It later argues it can't be liable for unlawful conduct it was unaware of.

However, *Kristensen* certainly didn't hold that a party needs actual notice of its agents



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

TCPA violations to be vicariously liable for those actions. *Henderson* even referenced *Kristensen*, remarking:

> "Unlike the texting publisher in *Kristensen*, here, a reasonable jury could find that the debt collectors pretended and demonstrably assumed to act as USA Funds' agents. *See* Restatement § 4.01 cmt b. As previously described, the debt collectors collected on unpaid loans by calling the student-borrowers. The collectors told the borrowers that they were calling about a loan owned by USA Funds. Without needing USA Funds' approval, the collectors negotiated, deferred, and took payments on USA Funds' behalf. In *Kristensen*, the texting publisher did not pretend to be the lenders' agent because the publisher did not identify itself in the text message."

*Henderson,* 918 F.3d at 1074.

Like the 3rd party debt collectors in *Henderson*, MOO's agents identified themselves as agents of MOO, offering MOO policies they could sell to the Plaintiff, quoted prices, negotiated terms, and sold the Plaintiff a final expense insurance policy from MOO on two different occasions. Like *Henderson*, a reasonable jury could find that the agents that sold the Plaintiff the MOO policies, "pretended and demonstrably assumed to act as [MOO's] agents."

Unlike *Henderson*, MOO's agents didn't collect payment for it. Instead, MOO took money directly from the Plaintiff's account three weeks after the first MOO policy was sold to the Plaintiff and again after the second MOO policy was sold to the Plaintiff.

MOO had to know about the facts surrounding the issuance of both policies, as it was the entity that issued them. Insurance policies don't issue themselves, and it's not an impermissible leap to infer that MOO gave the agents that sold the two policies to the Plaintiff access to whatever system it has in place to generate quotes, terms, and ultimately commence the policy issuance process. There is no other way MOO's agents could sell MOO's products to consumers.

MOO had to know that its telemarketing agents used aggressive and illegal telemarking tactics because the Plaintiff told MOO so, via letters directed to its general counsel and its



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

headquarters, on no fewer than three (3) occasions. MOO ratified the actions of its aggressive telemarketing agents by issuance of the MOO policies, particularly the second MOO policy that was issued weeks after the Plaintiff explicitly told MOO to cease its illegal telemarketing campaign against him.

These were the “objectively or externally observable indication . . . that the principal has exercised choice and has consented” to the actions of its agents that the restatement and *Henderson* speak of. MOO had to have “knowledge of material facts," also described as "actual knowledge" of the facts as it issued both insurance policies. MOO’s collection of payment on those policies was the “knowing acceptance of the benefit" *Henderson* also speaks of. As was their failure to put a stop to the illegal telemarketing campaign. For MOO, the payment of premiums derived from the illegal telemarketing campaigns was just too lucrative to put a stop to it.

Even if this Court were to assume, arguendo, that MOO had no preexisting relationship with its telemarketing agents that sold the Plaintiff the two MOO insurance policies, *Henderson* shows us that such agency can still arise under the “willful ignorance” theory, a principal may not know the material facts (of the agent’s actions), but may none the less ratify the actions of a 3rd party by ratifying the 3rd parties’ conduct, despite lacking awareness of the underlying facts.

The *Henderson* holding was recently affirmed by this Court in *Barton v. Am. Family Life Assurance Co. of Columbus*. In *Barton,* Nathen Barton sued an insurance company alleging TCPA violations by its agents. *Barton* also dealt with agents of an insurance company telemarketing final expense insurance to a consumer who had registered his phone number on the national DNC registry.

Like the Plaintiff in this matter, Mr. Barton, trying to figure out who was behind the illegal telemarketing calls, purchased policies from the telemarketer. Like the Plaintiff in this



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

matter, Mr. Barton repeatedly used reasonable means to demand the issuer of those policies stop telemarketing to him. Like the Plaintiff in this matter, Mr. Barton also repeatedly told the insurance company, and its counsel, to stop calling him.

Like the Plaintiff has alleged in this matter, Mr. Barton alleged that the insurance company gave their agents access to their name to generate sales and access to their computer system for pricing and issuing policies. Like the Plaintiff has alleged in this matter, Mr. Barton alleged that the telemarketers would hide their phone number with "spoofed" numbers.

Like in this matter, the insurance company Defendant in *Barton* moved to dismiss, alleging that the Plaintiff had failed to adequately allege facts supporting his argument of vicarious liability for the agents' actions.

On 1/22/26 the Honorable Judge Tiffany M. Cartwright ruled:

> "The Court finds that Mr. Barton has sufficiently alleged vicarious liability between Aflac and the telemarketers to survive a motion to dismiss pursuant to Rule 12(b)(6). At the pleadings stage Mr. Barton is not required to develop all the facts surrounding the agency relationship, nor is he required to plead a particular vicarious liability theory to proceed on that theory.
>
> *Barton v. Am. Family Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 LX 75171, at *10 (W.D. Wash. Jan. 22, 2026).

Specifically (in terms of ratification) this Court ruled:

> "Mr. Barton also alleges that he contacted counsel for Aflac to stop the unwanted calls on March 4, 2025, counsel informed Aflac, and he received another call selling Aflac products on June 16, 2025. Dkt. 1-2 ¶¶ 236-39, 246. This supports a theory of ratification as it is "conduct that justifies a reasonable assumption that [Aflac] consents" to the telemarketer's conduct.
>
> *Id.*

Like Mr. Barton, the Plaintiff used reasonable means to communicate his demands directly to MOO that it cease its illegal telemarketing campaign against him. In fact, he did so on three (3) separate occasions. As was the case with Mr. Barton, MOO ended up selling the



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

Plaintiff a second policy. This despite nearly two weeks having elapsed since the Plaintiff made his initial demand to MOO that it cease trying to sell him products.

As such, the Defendant's motion to dismiss on the issue of vicarious liability should be denied. The Complaint adequately alleges ratification and draws a litany of parallels to a case that survived a motion to dismiss in this Court just five months ago.

**Apparent Authority**

In the interest of brevity, the Plaintiff incorporates by reference all the arguments made in the preceding section dealing with ratification. Apparent authority allows liability to attach to a principal based on manifestations of that principal. In that respect, apparent authority is, arguably, the easiest mechanism by which vicarious liability can attach to a principal.

Apparent authority exists, "when a third party reasonably believes the [agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022).

Naming the entity of the products it is peddling (MOO), quoting terms and prices of those (MOO) products, and ultimately selling MOO policies certainly establishes that the Plaintiff had reasonable belief that the agents who called him were acting on behalf of MOO.

The Plaintiff receiving policies with MOO's name all over it and directing the Plaintiff to visit its website at www.mutualofomaha.com are the kinds of representations made by a principal that apparent authority is predicated on.

In *Barton*, Judge Cartwright ruled:

> "Mr. Barton alleges that Aflac gave the telemarketers "access to their computer systems for pricing and uploading customers [and] permission to use their business names," and continued "to do business with [t]he [t]elemarketers even as they received complaints of unwanted telemarketing." Dkt. 1-2 ¶ 67. He also alleges that the telemarketer sold him an actual Aflac policy, and he got the



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

> telemarketer's information from Aflac. *Id.* ¶¶ 231-32. This supports a theory of apparent authority, as one could reasonably believe that the telemarketers had the authority to act on behalf of Aflac."

> *Barton,* LX 75171 at *10.

The Plaintiff has made identical allegations in his Complaint against MOO. As such, MOO's 12(b)(6) motion to dismiss on the issue of vicarious liability should be denied on the basis of MOO's apparent authority.

**<u>The Plaintiff's complaint does not group plead.</u>**

Far from the "undifferentiated mass" pleading MOO decries, the Plaintiff's Complaint is the opposite of shotgun pleading. Instead, it presents a twenty-six-row chart identifying, for each call, the date, the calling number where known, whether the call used a robocall, whether it was subject to a do-not-call request, whether the calling number was spoofed, and which alias or entity was invoked and on whose behalf.

This is precisely the kind of call-specific, defendant-specific factual detail that Rule 8 requires and that distinguishes this Complaint from the "everyone did everything" pleading rejected in *Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir. 2011), and from the shotgun pleading condemned in *Gibson v. City of Portland*, 165 F.4th 1265, 1291–93 (9th Cir. 2026), neither of which involved a comparably granular, call-by-call factual chart.

That some counts are pleaded against "the Defendants" collectively does not convert particularized factual allegations into group pleading. A plaintiff may plead collectively where, as here, the underlying facts as to each defendant's conduct are separately and specifically set out elsewhere in the complaint. Rule 8 requires fair notice of the claims and the grounds for them, not a formalistic repetition of the chart in every count. *See Twombly*, 550 U.S. at 555.

MOO can be in no doubt which calls, which policies, and which withdrawals are attributed to it, as the chart says so by name, date, and dollar amount,.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**<u>Counts 3–5 are privately enforceable as 47 C.F.R. § 64.1200(d) was promulgated pursuant to § 227(c)</u>**

MOO argues that the Plaintiff's counts 3 through 5 (no internal do-not-call procedures, refusal to identify, and ignored do-not-call requests) fail because 47 C.F.R. § 64.1200(d) was supposedly promulgated under § 227(d), which has no private right of action. This is the minority view in courts across the country.

Every court of appeals to decide the question has rejected that position. § 227(c)(5) creates a private right of action for violations, "of the regulations prescribed under this subsection," so the question is which subsection § 64.1200(d) implements. Subsection (c) is captioned "Protection of subscriber privacy rights" and directs the FCC to adopt regulations, "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Consumers can enforce these regulations through a private right of action. 47 U.S.C. § 227(c)(5).

That is what 47 C.F.R. § 64.1200(d) does. It requires telemarketers to maintain company-specific do-not-call procedures, honor do-not-call requests, identify themselves and the person on whose behalf the call is made, and train their personnel.

In *Barton v. Am. Family Life Assurance Co. of Columbus*, Judge Tiffany M. Cartwright ruled that § 64.1200(d)(4) creates a private right of action:

> "Mr. Barton has not provided sufficient information about the contents of the February 2025 calls to support an allegation that they violated § 64.1200(d)(4). *See* Dkt. 1 ¶ 246. However, he has sufficiently alleged that the June 16, 2025 call violated § 64.1200(d)(4). *Id.* As alleged, the script used in the June call did not provide Mr. Barton the telephone number of the business. Accordingly, Aflac's motion to dismiss claim six is DENIED as to the June 16, 2025 phone call."

*Barton,* LX 75171 at *18-19.

In terms of § 64.1601(e) Judge Cartwright ruled:



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

> "In the absence of controlling authority, this Court agrees with *Bright Solar Mktg.*, adopts the reasoning of *Newell* and *Dobronski*, and concludes that enforcement of § 64.1601(e) is encompassed by the private right of action in 47 U.S.C. § 227(c)."
>
> *Barton,* LX 75171 at * *20.

This Court has discretion to determine if the Plaintiff's claims under 47 C.F.R. § 64.1200(d) allow for a private right of action. Plaintiff respectfully encourages this Court to continue to follow the lead of the Sixth and Eleventh Circuit Court of Appeals and rule that § 64.1200(d) and § 64.1601(e) continue to provide for a private right of action. *See Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 629 (6th Cir. 2009); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019).

**<u>The Plaintiff has pleaded injury and causation for his CPA claims</u>**

MOO's reliance on *Gragg v. Orange Cab Co*., is outdated. Four years after that decision was handed down, the Washington Supreme Court held that CEMA's statutory damages, specifically RCW 19.190.040, automatically satisfy all five *Hangman* elements. "We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law." *Wright v. Lyft, Inc*., 189 Wn.2d 718, 732, 406 P.3d 1149 (2017).

The Plaintiff's claims under The Washington Telephone Solicitation Act ("WTSA") and Washington Automatic Dialing and Announcing Device Act ("WADADA") are both per se violations of the CPA under RCW 80.39.390(12) and RCW 80.36.400(4) respectively.

In each of the Plaintiff's corresponding counts related to the WTSA and WADADA, he "re-alleges the previous paragraphs" (causation) and pleads, "The Plaintiff has been damaged and injured as a result of these [MOO's] actions."

In the context of the TCPA, and related state claims, to satisfy the fourth element, injury to business or property and the fifth element, causation, a plaintiff must show that the unlawful



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

solicitation directly diminished their commercial enterprise, property interest, or money, even if such damages are minimal. *Mason v. Mortg. Am.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990).

The *Mason* court went onto hold:

> "[t]his distinction makes it clear that no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice for this element of the *Hangman Ridge* test." The fact that the Act allows for injunctive relief bolsters the conclusion that injury without specific monetary damages will suffice. A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation. The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal."

*Id.*

The Plaintiff pleaded about, and prayed for, amongst other things, his actual damages. MOO withdrew $53.04 from his bank account on two separate occasions for policies he had explicitly told MOO, in writing and by policy number, that he did not want and that MOO should cancel without charge. MOO has never voluntarily refunded that money.

Even the postage stamps for the three letters mailed to MOO in the Plaintiff's attempt to bring an end to telemarking calls are "injury" under the CPA. Out-of-pocket postage expenses incurred by a plaintiff to investigate, respond to, or attempt to dispel the legal ramifications of a deceptive business practice are legally sufficient to establish a compensable injury to "business or property." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 35, 58-60, 204 P.3d 885 (2009). *See also Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 178-180, 159 P.3d 10 (2007).

Causation is also adequately pleaded. MOO argues that Plaintiff would have been "equally bothered" by truthful calls, but the Plaintiff should have never received them in the first place, as he was registered on the national DNC list.

MOO's argument also focuses on the wrong injury. Plaintiff's pecuniary losses do not flow only from the mere annoyance at receiving telemarketing calls. They also flow directly from the callers' concealment of their true identity and use of spoofed caller-identification



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

information, which is precisely why Plaintiff was forced to purchase the policies at issue "to identify who the insurance agent was selling for."

Had the callers truthfully identified themselves and their affiliation at the outset, as RCW 80.36.390(3) requires, Plaintiff would have had no need to make an investigatory purchase at all, send cease and desist letters, and no money would ever have been withdrawn from his bank account or expended on postage.

That is but-for causation between the deceptive practice and the specific monetary injury alleged, and it satisfies the fifth *Hangman* element at the pleading stage.

**<u>The injunctive relief under the CPA requires additional pleading and thus is proper as a separate count</u>**

Unlike a garden-variety request for an injunction as a remedy for common-law claims, Count Twelve invokes causes of action that Congress and the Washington Legislature have expressly made privately enforceable through injunctive suits: 47 U.S.C. § 227(c)(5)(A), RCW 80.36.390(13), RCW 80.36.400(4), and RCW 19.86.090. Dkt. 1-1 ¶¶ 196–199.

Each of these provisions independently authorizes "a private action" to enjoin the described violations; they are not silent statutes onto which Plaintiff has grafted an equitable remedy, as in the cases cited in MOO's motion, none of which involved a statute expressly conferring a private right to injunctive relief distinct from damages.

Count Twelve also does more than re-plead liability. It separately alleges the additional, forward-looking predicate that injunctive relief requires and that the earlier damages counts do not: that Defendants' conduct "constitute[s] a documented pattern and practice of behavior" continuing to impact Plaintiff and similarly situated individuals, and that injunctive relief is "necessary to prevent further harm." Dkt. 1-1 ¶¶ 203–204.

Indeed, the Plaintiff's Complaint alleges that MOO "continued calling the Plaintiff" even after repeated do-not-call requests spanning from December of 2025 through February 2026,



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

which is precisely the kind of ongoing-harm allegation that supports forward-looking injunctive relief as distinct from backward-looking statutory damages for calls already made.

Pleading such injunctive relief as its own count, rather than burying it in the damages counts, promotes clarity, not redundancy, and tracks the structure Congress itself chose by making injunctive relief a separately available private remedy under § 227(c)(5)(A) and its counterparts under WTSA, WADADA and CPA.

**It's premature for MOO to move for summary judgment on the issue of Count 2**

Established business relationship ("EBR") is a potential affirmative defense MOO may plead in its eventual Answer to the Plaintiff's complaint. However, it's not an appropriate subject for a 12(b)(2) or 12(b)(6) motion to dismiss.

Besides, even if one were to assume, arguendo, it did apply, the Plaintiff's multiple letters demanding MOO cease calling him would terminate that exception to the TCPA.

Furthermore, Exhibit A to the Declaration of Ms. Peterson is an application, not a policy. An insurance application would fall under the 3-month "inquiry" EBR, not the 18-month transaction EBR. 47 CFR § 64.1200(f)(5).

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court deny MOO's motions to dismiss in their entirety. No discovery has commenced in this matter, and the Plaintiff has certainly established a prima facie showing that this court has personal jurisdiction over MOO. Should this Court grant MOO's motions, in part or in whole, the Plaintiff respectfully requests this Court grant him leave to amend his Complaint and/or the decision on the motion be deferred pending limited jurisdictional discovery.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

DATED July 22, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015

## DECLARATION OF COMPLIANCE

The Plaintiff certifies this Response contains 6,706 words in compliance with LCR 7(e)(4).

DATED July 22, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider

Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015

## DECLARATION OF SERVICE

I, Peter Schneider, am a resident of the State of Washington, over the age of 18 and competent to make this declaration herein. On the date indicated below, I served the foregoing document to the following recipients in the manner described below:

Mark S. Eisen

Patrick J Fitzgerald

Mallory L. Satre

Jenna S. Schneider

John C. Versnel, III

Maxwell A Wesemann

Benjamin C Woodruff

☐ USPS first class mail
☐ E-mail
☐ Facsimile
☒ Other – ECF e-service

DATED July 22, 2026.

/s/ Peter Schneider
Peter Schneider



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015