THE HONORABLE TIFFANY M. CARTWRIGHT

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| RON LITTMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | No. 3:26-cv-05538-TMC<br><br>**DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE CLASS ACTION COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: July 29, 2026<br><br>ORAL ARGUMENT REQUESTED |

## INTRODUCTION

Plaintiff's Opposition confirms, rather than cures, the defects in the Complaint. It concedes the dispositive facts at issue: Mutual of Omaha placed none of the 26 at-issue calls, the callers used non-Mutual-of-Omaha aliases, and those callers "spoofed" their numbers so that Plaintiff could not reach "Mutual of Omaha . . . or any of their agents." Compl. ¶¶ 37–38, 44–49. Yet Plaintiff asks the Court to infer that Mutual of Omaha controlled, authorized, or ratified every call because two callers ultimately sold policies bearing the Mutual of Omaha brand. That's like suing Apple because a mall kiosk that hawks 20 phone brands cold-called the neighborhood pitching iPhones. Just like every iPhone sale does not impute the retailer's jurisdictional contacts to the phone's manufacturer, a policy sold by some third-party caller doesn't impute contacts to its issuer. The Complaint thus fails to tie Mutual of Omaha to any Washington-directed act, precluding personal



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

jurisdiction. And Mutual of Omaha's sworn evidence—uncontroverted by anything Plaintiff filed—independently defeats jurisdiction however the pleadings are read. Plaintiff's own filings put the point beyond argument: he swears here that all 26 calls were made "on MOO's behalf," while swearing in his same-day opposition to Aetna's motion that the same 26 calls were made "on Aetna's behalf." *Compare* Opp. (ECF No. 31) at 2, *with* ECF No. 28 at 2. Both cannot be true. A plaintiff who cannot say whose agents the callers were has not pleaded that they were anyone's.

*Barton v. American Family Life Assurance Co.* does not help Plaintiff but hurts him. There, the plaintiff pleaded what this Complaint does not: that the insurer gave the callers access to its computer systems and let them use its name. *Am. Family*, 2026 WL 177598, at *1, *4 (W.D. Wash. Jan. 22, 2026) (Cartwright, J.). *American Family* tested the pleadings alone; Mutual of Omaha has challenged jurisdiction by declaration, which stands uncontroverted. Sensing the gap, Plaintiff tries to adopt those same facts in his Opposition. But they appear nowhere in the Complaint, and amendment may not be accomplished through opposition briefing. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Even through his impermissible attempts to amend by argument, Plaintiff never alleges that Mutual of Omaha dialed him. Instead, he describes independent telemarketers hiding behind fake names. Opp. at 2. Yet, Plaintiff says because he bought a policy carrying Mutual of Omaha's branding, Mutual of Omaha must have written or approved the callers' script and their manner of calling. Opp. at 11, 13, 16–17. That is a leap the Complaint cannot support, and one Mutual of Omaha's declaration forecloses. Peterson Decl. ¶¶ 9–12.

The remaining arguments fail for reasons Plaintiff barely contests: Count Twelve is a remedy, not a claim; the WCPA count pleads no cognizable injury caused by any deceptive quality of the calls; and Plaintiff's WCPA authority, *Wright v. Lyft, Inc.*, construes a statute he did not sue under. *Wright*, 189 Wash. 2d 718 (2017).[1] Because Plaintiff alleges no forum-directed act or

[1] Mutual of Omaha preserves its position that the regulations underlying these counts confer no private right of action—§ 64.1200(d) implements § 227(d)'s procedural standards, and § 64.1601(e) implements § 227(e), which Congress made enforceable only through FCC forfeitures and state-attorney-general actions. *See Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4–6 (D. Md. 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017). Mutual of Omaha



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

actionable call attributable to Mutual of Omaha, the Complaint should be dismissed.

## ARGUMENT

### I. There Is No Personal Jurisdiction Over Mutual Of Omaha.

#### A. Mutual of Omaha Directed No Conduct at Washington.[2]

The jurisdictional question is simple: the record identifies no Washington-directed conduct by Mutual of Omaha giving rise to Plaintiff's claims. Nothing. And Plaintiff, who bears the burden, offers no forum-directed conduct to supply the gap, instead conceding that Mutual of Omaha did not place the calls. Plaintiff's burden is a *prima facie* showing: uncontroverted allegations are accepted, and genuine conflicts in the parties' declarations are resolved in his favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). But once Mutual of Omaha challenged jurisdiction by declaration, Plaintiff could "not simply rest on the bare allegations of [the] complaint," *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)—he needed evidence. And on every fact that matters, he offered none that conflicts with Mutual of Omaha's.

The Opposition never engages with this rule. It points to no act *by Mutual of Omaha* aimed at Washington. Every Washington-directed act it recites, *e.g.*, dialing a 253 number, pitching final expense insurance, and "consummating" sales, was the work of *unidentified telemarketers.* Opp. at 7–9. Plaintiff's area-code cases show only that a company that *itself calls* a Washington number may expect an effect there. They do not say who made these calls, or whether that caller's conduct can be laid at Mutual of Omaha's door. Those contacts count only if the callers were Mutual of

---

recognizes that this Court held otherwise in *Am. Family*, 2026 WL 177598, at *7. The Court need not reach it, for the reasons described herein.

[2] Plaintiff never disputes that Mutual of Omaha is not "at home" in Washington, so there is no general jurisdiction. *See Moore v. Effectual Inc.*, 2024 WL 1091689, at *10 (W.D. Wash. Mar. 13, 2024).



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

Omaha's agents. *See Winters v. Grand Caribbean Cruises, Inc.*, 2021 WL 3709854, at *5–7 (D. Ariz. Aug. 20, 2021). The Complaint pleads no facts making them so, and Plaintiff points to no evidence, as he must.

Plaintiff's two "independent" Mutual of Omaha contacts fare no better. He says Mutual of Omaha issued and mailed two policies to Washington and pulled premiums from his Washington account. Opp. at 8–9. But his own evidence says otherwise: United of Omaha issued the policy and took the one completed withdrawal. ECF No. 32 ¶ 10 & Exs. A–B. The policy uses Mutual of Omaha's branding and calls United its wholly owned subsidiary, but common ownership and a shared name do not hand the parent the subsidiary's forum contacts. *Ranza*, 793 F.3d at 1070–73 (no imputation of a subsidiary's contacts absent day-to-day control amounting to alter ego). Plaintiff pleads no alter-ego theory or facts showing the pervasive control the Ninth Circuit requires.

Even if those transactions were Mutual of Omaha's, Plaintiff's claims do not arise out of them. The claims are about the calls. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–06 (9th Cir. 2023) (Plaintiff's own authority: claims must arise out of the defendant's forum contacts). And in any event, those transactions would not establish purposeful direction or availment. Due process looks to contacts the defendant creates, not to where a plaintiff happens to live. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). A sale to a forum resident, standing alone, will not do. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Boschetto v. Hansing*, 539 F.3d 1011, 1017, 1019 (9th Cir. 2008). And by Plaintiff's own account, he bought the policies "to identify" the caller, so the transactions trace to *his* unilateral activity, not Mutual of Omaha's targeting of Washington. Compl. ¶¶ 61–68. A plaintiff cannot buy his way into a forum. *See James Avery Craftsman, Inc.*



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

*v. Lugosch*, 486 F. Supp. 2d 595, 599 (W.D. Tex. 2007) (rejecting a purchase arranged to create jurisdiction).

Plaintiff's effort to distinguish *Barton v. Pinnacle Home Improvements LLC* underscores the problem. The defendant there sent the messages *itself* and knew the plaintiff was in Washington because the plaintiff had said so in a chat on the defendant's *own* website. 2024 WL 2943805, at *1, *4–5 (W.D. Wash. June 11, 2024) (Cartwright, J.). Mutual of Omaha did none of that.

**B. The Callers Were Not Mutual of Omaha's Agents.**

Plaintiff concedes Mutual of Omaha placed none of the calls. Opp. at 10. So he needs an agency theory—actual authority, apparent authority, or ratification. A call that merely benefited a seller is not enough. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6584–85, 6593 (2013). Plaintiff has none.

Mutual of Omaha's evidence forecloses the theory. It "does not employ or contract with any of the identified entities to conduct telemarketing on Mutual of Omaha's behalf." Peterson Decl. ¶ 9. At most, an entity like these would hold an independent producer appointment—free to offer the products of many carriers, controlled by none, and "engaged specifically to solicit or market" no one's. *Id.* The Complaint says the same thing: these marketers touted "40 different" and "top 25" carriers. Compl. ¶ 34. A salesman with forty principals answers to none of them. Plaintiff's declarations do not answer any of this. They show that he received calls, bought policies, and mailed letters. They do not show that Mutual of Omaha employed, appointed, instructed, or so much as communicated with any caller. On the only question that matters, agency, the Peterson Declaration stands unrebutted, and even at the *prima facie* stage the Court accepts an uncontroverted declaration. *See Abitbol v. Homelink, LLC*, 2020 WL 5102149, at *3 (C.D. Cal. July 28, 2020) (dismissing for lack of personal jurisdiction where the plaintiff's showing did not



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

rebut the defendant's declaration). There is no agency, so there is no imputation—and no jurisdiction.

### 1. *Plaintiff Pleads the Same 26 Calls Against Both Insurers—So He Pleads Agency as to Neither*.

Plaintiff's chart lists 26 calls, but the chart is not the problem—the counts are. Each demands "no fewer than fifty (50)" TCPA and "one hundred (100)" WCPA violations from *each* Defendant alike. Yet the chart ties only two policies to Mutual of Omaha and shows the marketers overwhelmingly pitched and sold Aetna. Compl. ¶¶ 115, 134, 193. A plaintiff recovers only for the calls he pleads with specificity—not for extra calls resting on the "conclusory statement that they existed." *Barton v. Real Innovation Inc.*, 792 F. Supp. 3d 1195, 1209 (W.D. Wash. 2025). And to the extent the WCPA count sounds in fraud, Rule 9(b) independently forbids lumping the Defendants together and demands that Plaintiff identify each Defendant's role. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

Plaintiff's mirror-image oppositions underscore the problem. He told Aetna that all 26 calls were made "on Aetna's behalf," ECF No. 28 at 2, then told Mutual of Omaha that the same 26 calls were made "on MOO's behalf," Opp. at 2. The chart itself refutes his all-calls theory: some entries reference one insurer, some both, and some neither. Yet Plaintiff attributes all 26 calls to Mutual of Omaha here, and the same 26 to Aetna in his companion opposition, demanding the full "fifty (50)" TCPA and "one hundred (100)" violations from each. Those attributions cannot both be true, and the contradiction renders implausible any allegation that these were Mutual of Omaha's agents' calls. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This District recently dismissed a materially identical group-pleaded TCPA complaint by Nathen Barton—whose declaration Plaintiff submits here (ECF No. 33)—holding that "[a] complaint that alleges 'everyone did everything' . . . cannot survive a motion to dismiss." *Barton v. Bright Solar Mktg. LLC*, 2025 WL 2880136, at *3 (W.D. Wash. Oct. 9, 2025). Pressing the same all-calls theory against each Defendant only confirms the Complaint cannot plausibly pin any call on a particular principal. Without a viable agency theory, no call by an unidentified telemarketer can be treated



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

as this Defendant's act. *See MFG Universe Corp. v. Next Gen LED, Inc.*, 2022 WL 3028081, at *2 (W.D. Wash. Aug. 1, 2022).

### *2. Plaintiff Cannot Add Actual Authority Through Argument.*

The Complaint's lone control allegation fares no better. It says "Defendants" instructed "their agents" to use fake names and false caller ID, but names no speaker, no instruction, no contract, and no communication behind that conclusion. Compl. ¶¶ 123–24. Peterson's declaration attests the opposite: Mutual of Omaha "did not instruct any person to identify themselves using a false or fictitious business name, or to transmit inaccurate or masked caller-identification information." Peterson Decl. ¶ 12. Plaintiff offers no evidence linking any caller to Mutual of Omaha. His but-for argument does not fill the gap; it assumes what it must prove—that the callers' conduct was Mutual of Omaha's. *See* Opp. at 9.

Plaintiff instead asks the Court to infer for the first time that Mutual of Omaha "gave the agents . . . access to whatever system it has in place" to quote and issue policies. Opp. at 13. That allegation appears nowhere in the Complaint, and Plaintiff may not amend through briefing or declarations. *Schneider*, 151 F.3d at 1197 n.1. The Court cannot credit Plaintiff's new opposition facts and inferences—the two premium charges, the letters to "General Counsel" and "Headquarters," the post-sale website reference, and the supposed "system access"—none of which appears in the Complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *United States v. Ritchie*, 342 F.3d 903, 907–09 (9th Cir. 2003); *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). And taking an application or quoting a product does not show that a carrier controlled how, when, whom, or from what number a caller selling a variety of competing insurance products dialed. *Jones* itself rejected actual authority where the seller could set standards and share information but did not control the day-to-day manner and means. 887 F.3d at 450–51. Strip away the new system-access inference, and all that is left is the label "agents," which is a legal conclusion, not a pleaded agency relationship.

### *3. The Callers' Own Statements Do Not Establish Apparent Authority.*



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

Apparent authority fails too. It must trace to the principal's manifestations to the plaintiff, not the supposed agent's claims. *Winters,* 2021 WL 3709854, at *6. Here, the only manifestations the Complaint pleads are the callers': they named Mutual of Omaha as among the many competing brands of policies they sold, quoted terms, and "sold" competing brands' policies. And it concedes those callers used names that "are not the business name of Mutual of Omaha . . . or any of their agents." Compl. ¶¶ 44–49.

The policy documents and website Plaintiff now identifies do not cure the problem—they come too late. *See* Opp. at 16–17. Apparent authority depends on a manifestation that shaped the third party's belief when the agent acted. But Plaintiff says he purchased coverage to find out who was behind the calls—not that any pre-call representation by Mutual of Omaha led him to answer. Compl. ¶¶ 61–68. The policy's branding confirms only that Mutual of Omaha and United of Omaha—the separate subsidiary that, per Plaintiff's own Exhibit A, actually issued the policies—are affiliated, and Plaintiff received the policies after the calls and the purchases. And his rhetorical "Who else but an authorized MOO agent" could quote and sell the policies (Opp. at 11) still asks the Court to infer authority from the supposed agent's own conduct. That is backwards: apparent authority runs from the principal to the third party. Who else but an authorized Sony agent could sell Sony headphones? Anyone who stocks them.

Plaintiff leans on *American Family Life Assurance Co.*, claiming he made "identical allegations." Opp. at 16–17. He did not. The *American Family* plaintiff pleaded coordination: the insurer "gave the telemarketers access to their computer systems for pricing and uploading customers and permission to use their business names," and "continued to do business with the telemarketers even as they received complaints." *Am. Family*, 2026 WL 177598, at *4 (cleaned up). Those were real manifestations and real knowledge, and they carried the apparent authority and ratification theories. *Id.* This Complaint alleges none of it. Plaintiff tries to add the system access by inference in his Opposition, points to no pre-call manifestation by Mutual of Omaha, and alleges only that he mailed letters to generic corporate addresses. Those missing allegations

are dispositive here.[3]

#### 4. *Benefit Alone Does Not Establish Ratification, and Plaintiff Fails to Plead Knowledge.*

Plaintiff's ratification theory skips the element that matters. A principal ratifies only by affirming the challenged act knowing its material facts or affirming while aware that it lacks them. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073–74 (9th Cir. 2019). Issuing a policy after an application comes in shows neither. It does not show that Mutual of Omaha knew an unidentified caller used spoofing, aliases, prerecorded messages, or do-not-call violations to make the sale. Just the opposite: the Complaint alleges that the callers deliberately concealed the information Mutual of Omaha would need to identify them. Compl. ¶¶ 37–38, 44–49.

Nor is there any "benefit" to ratify. Nothing in the Complaint or Plaintiff's papers shows that Mutual of Omaha knowingly accepted anything from unlawful conduct. At most, his exhibits show a single premium payment—made to a different company—with nothing suggesting anyone knew any call was unlawful. One payment to a different entity, with zero knowledge of unlawful conduct, cannot establish ratification. *In re DISH Network*, 28 FCC Rcd. at 6593 (benefit "without more" insufficient).

Plaintiff's "willful ignorance" theory fares no better. Opp. at 14. The Complaint alleges that Plaintiff told Mutual of Omaha about "the illegal calls." Compl. ¶¶ 62, 66, 69. Ratification requires more: knowledge of the material facts of the act affirmed, or affirmance despite knowing those facts are missing. *Henderson*, 918 F.3d at 1073–74. General notice that unwanted calls are occurring is not knowledge of any particular call, and it is not an election to treat that call as one's own. The letters cannot do that work in either direction. As to the calls that preceded them, the letters supplied notice, not affirmance. And after they arrived, Mutual of Omaha took no affirming act: no policy issued after the second letter, and the only completed charge was United of Omaha's. As to the calls that followed, ratification does not run forward. Knowing that unlawful calls

[3] This District has dismissed similar conclusory agency claims brought by Plaintiff's counsel. *See, e.g.*, *Sundstrom v. Ocean Reef Media LLC*, 2026 WL 1361646 (W.D. Wash. May 15, 2026) (holding that an agent's use of a principal's name or logo is not a manifestation *by the principal* absent an allegation the principal authorized it).



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

happened yesterday does not make tomorrow's call, placed by a stranger, Mutual of Omaha's own. That would be authorization, and Plaintiff has not pleaded it. Nor do the letters tie any caller to Mutual of Omaha. They describe strangers, including a licensed Washington producer Plaintiff never alleges holds any Mutual of Omaha appointment. And the Complaint never alleges Mutual of Omaha received the letters at all. It alleges only that an employee of Plaintiff's counsel's firm mailed them. ECF No. 33 ¶¶ 2–6, Exs. 1–3.

Plaintiff is correct that *Henderson* permits ratification in some circumstances even without a preexisting agency relationship. Opp. at 12–14. But *Henderson* turned on facts absent here. There, the debt collectors "pretended and demonstrably assumed to act" as the defendant's agents by identifying the creditor, negotiating obligations, and taking payments on its behalf. *Henderson*, 918 F.3d at 1074. Here, the callers selling policies from Mutual of Omaha's competitors hid behind unrelated names, spoofed their numbers, and could not be traced to Mutual of Omaha "or any of [its] agents." Compl. ¶¶ 37–38, 44–49. Plaintiff identifies no intermediary, no contract, no chain of any kind. So the Complaint pleads neither a would-be agent nor Mutual of Omaha's knowing approval of the calls. Ratification cannot bridge both gaps.

**C. Jurisdictional Discovery is Inappropriate.**

Plaintiff's fallback request for jurisdictional discovery names no discovery he would take and no fact it could turn up. Opp. at 22. A court does not open discovery to hunt for an agency relationship based only on labels a sworn declaration refutes. *Ranza*, 793 F.3d at 1068; *Boschetto*, 539 F.3d at 1020. Discovery rewards a "colorable basis"; it does not substitute for one. *Solt v. CSA Am. Testing & Certification LLC*, 2024 WL 4266680, at *3 (W.D. Wash. Sept. 23, 2024). Where jurisdiction rests on bare allegations met by specific denials, the Court "need not permit even limited discovery," *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)—otherwise any plaintiff could name whichever carrier a spoofed caller mentioned and use the suit as a tool to put that stranger through discovery. Nor is that a gap discovery could fill: Plaintiff already has the callers' identities. His own letters name Isaac Reed (with his phone number), Randy Day (with his Washington producer license



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

number), and David Anderson. ECF No. 33, Exs. 1–3. He pleaded none of them, sued none of them, and never alleges any holds a Mutual of Omaha appointment. A plaintiff who knows exactly who called him does not need jurisdictional discovery from a stranger to the calls—he needs to sue the callers.

## II. <u>Alternatively, the Complaint Fails to State a Claim</u>.

### A. Count Eleven (WCPA) Pleads No Cognizable Injury or Causation.

Plaintiff's authorities do not eliminate the injury and causation elements. *Wright* held that CEMA's automatic liquidated-damages provision, RCW 19.190.040, supplies those elements for a CEMA-based WCPA claim. 189 Wash. 2d at 728–32. Plaintiff did not sue under CEMA. His per se theory rests on the WTSA and WADAD, which contain no comparable automatic-damages provision. A *per se* predicate therefore does not relieve him of pleading injury to business or property caused by this Defendant. *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161 (W.D. Wash. 2017). Plaintiff's boilerplate allegations that he was "damaged and injured" never say which act by Mutual of Omaha caused which loss.

*Panag* does recognize reasonable investigative costs, including postage, incurred to dispel uncertainty created by a deceptive practice. *Panag v. Farmers Ins. Co. of Wash.,* 166 Wash. 2d 27, 59–65 (2009). But it does not dispense with causation, and Plaintiff still has not connected those costs to Mutual of Omaha. His evidence shows a United of Omaha policy and one completed withdrawal labeled "United of Omaha"; Exhibit C shows only a scheduled draft. ECF No. 32 ¶¶ 10, 17, Exs. A–C. Plaintiff says he bought policies and mailed letters because the callers concealed their identities. Opp. at 20–21. That theory may explain why he investigated, but it does not establish that Mutual of Omaha authorized the concealment or caused the resulting expense. And even if postage counts as injury, the same missing link between Mutual of Omaha and the callers defeats causation.

### B. Count Twelve (Injunctive Relief) Is Not a Cause of Action.

Plaintiff responds that the TCPA, WTSA, WADAD, and WCPA authorize private actions



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

for injunctive relief and that Count Twelve pleads continuing harm. Opp. at 21–22. But that makes an injunction an available remedy under a viable claim; it does not turn that remedy into a claim of its own. *Markoff v. Puget Sound Energy, Inc.*, 9 Wash. App. 2d 833, 851 (2019); *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1316 (W.D. Wash. 2021). That an injunction is "necessary to prevent further harm," Compl. ¶ 204, describes the relief he wants, not a wrong Mutual of Omaha committed. And calling the request a separate count does not supply the conduct attributable to Mutual of Omaha that every count lacks. If a claim survives, Plaintiff may seek whatever relief its statute permits. Count Twelve adds nothing and should be dismissed.

### C. Plaintiff's Motion to Strike Paragraph 15 of the Peterson Declaration Should Be Denied.

Plaintiff's motion to strike paragraph 15 fails at every step. Procedurally, Rule 12(f) reaches only "pleadings"; a declaration is not a pleading and cannot be stricken—at most the Court disregards any inadmissible portion, and none is. *See Foremost Ins. Co. Grand Rapids Mich. v. Guillen*, 641 F. Supp. 3d 980, 986 (W.D. Wash. 2022) (declining to strike declarations because they "are not pleadings" and Rule 12(f) "is therefore inapplicable"). The best-evidence objection misreads Rule 1002, which requires the original only to prove a writing's *contents*, not testimony to a fact that exists independently of any document. *See United States v. Diaz-Lopez*, 625 F.3d 1198, 1201–02 (9th Cir. 2010) (Rule 1002 inapplicable where a witness testifies to a fact that exists independently of a writing rather than to the writing's contents). Ms. Peterson testifies to the fact of the parties' relationship—that Plaintiff purchased dental coverage and gave Mutual of Omaha the very number he now sues over—and Exhibit A is attached regardless. Nor is the posture right: on a Rule 12(b)(2) motion the Court may consider declarations and materials outside the pleadings, *Boschetto*, 539 F.3d at 1015, and Exhibit A is properly before it on Rule 12(b)(6) review.



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

## CONCLUSION

Plaintiff's Opposition never supplies the missing link between this Defendant and the unidentified callers, and does not show that Mutual of Omaha authorized, controlled, or knowingly ratified the unlawful calling practices alleged. Plaintiff's request for leave to amend offers no additional facts that would cure that defect, and the new system-access theory appears only in argument. Because the defect is foundational, dismissal should be with prejudice.

Dated: July 29, 2026

I certify that this memorandum contains 4,183 words, in compliance with the Local Civil Rules

SNELL & WILMER L.L.P.

By: */s/ Jenna S. Schneider*


Mallory L. B. Satre, WSBA #50194
Benjamin C. Woodruff, WSBA #56618
Snell & Wilmer L.L.P.
600 University Street, Suite 310
Seattle, Washington 98101-3122
Telephone: 206.741.1420
msatre@swlaw.com;
bwoodruff@swlaw.com

**WATSTEIN TEREPKA LLP**
Patrick J. Fitzgerald, WSBA #62484
pfitzgerald@wtlaw.com
Jenna S. Schneider (pro hac vice)
jschneider@wtlaw.com
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309


*Counsel for Defendant Mutual of Omaha Insurance Company*