# EXHIBIT B

FILED
2026 Sep-21 PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**ROBIN BLACK,**
Plaintiff,

**v.**

**USHEALTH ADVISORS, LLC, *et al.*,**
Defendants.

**Case No. 1:25-cv-1365-CLM**

# MEMORANDUM OPINION

From August 2023 to January 2025, Plaintiff Robin Black received dozens of calls and text messages from healthcare insurance telemarketers. Aside from being annoyed, Black believed the calls and texts violated the Telephone Consumer Protection Act ("TCPA") and Alabama law because her phone number is listed on the national "Do-not-Call Registry." So Black sued the two companies that she says are responsible.

One of those companies, USHealth Group, Inc. ("USHG"), contends it had nothing to do with the calls and texts and, as a result, moves to dismiss for lack of personal jurisdiction. (*See* doc. 12). In response to the motion, Black requested jurisdictional discovery to uncover USHG's connections to Alabama and her claims. (*See* doc. 18). The court granted Black's request, allowed Black to propound six interrogatories related to the jurisdictional issue, and required additional briefing. (Doc. 25). The motion is now fully briefed.

For the reasons below, the court **GRANTS** USHG's motion to dismiss (doc. 12) and **DISMISSES** Black's claims against USHG for lack of personal jurisdiction.

———

# BACKGROUND

## A. Factual Background

Black lives in Fort Payne, Alabama. USHG is a corporation located in Fort Worth, Texas, and incorporated in Delaware.

In November 2004, Black registered her cell phone number on the national DNC registry. Starting in August 2023, Black began receiving calls and texts from various telemarketers. Each of the telemarketers, it appears, tried to sell healthcare insurance to Black. For example, on September 3, 2024, Black received a recorded telemarketing call from "Angela Provost," who is a licensed health insurance advisor with USHealth Advisors ("USHA"). (*See* doc. 1, p. 4). And on September 25, 2023, Black received a text message from a telemarketer "regarding health coverage quotes[.]" (*See id.*, p. 5). In total, Black claims that she received at least seven calls and 37 texts about healthcare insurance from August 2023 to January 2025.

After investigating the origins of the calls and texts, Black landed on two culprits: USHG and USHA.[1] On February 19, 2025, Black emailed a USHG lawyer, Erica Gibbs, and made an offer to settle her potential claims.[2] Black and Gibbs tried to negotiate a settlement, but their efforts failed.

## B. Procedural History and the Motion to Dismiss

Black sued USHG and USHA on August 19, 2025. (Doc. 1). Black brings two counts against both Defendants:

- **Count 1: Violation of the TCPA, 47 U.S.C. § 227(c)(5)**. Black claims that USHG and USHA violated the TCPA "by initiating, or causing to be initiated, telephone solicitations" to her DNC-registered number.

---

[1] USHG admits that it is USHA's parent corporation. (*See* doc. 21, p. 8).

[2] Black and Gibbs previously negotiated settlements in two Alabama state court cases. In those cases, Gibbs worked "on behalf of individuals and/or entities for fact situations virtually identical to the current case." (Doc. 17, p. 1).

- **Count 2: Violation of Ala. Code § 8-19C-8**. Black contends that USHG and USHA conduct, as described in Count 1, likewise violated Alabama law.

USHA answered Black's complaint. (Doc. 11). But USHG moved to dismiss for lack of personal jurisdiction. (Doc. 12). According to USHG, it's merely an-out-state insurance holding company and "does not market or sell insurance products or services at all, whether in Alabama or anywhere else in the world[.]" (*Id.*, p. 2). USHG attached a declaration from its chief financial officer, Billy Jacobs. In that declaration, Jacobs states, among other things, that USHG "has never transacted any business in the State of Alabama," and that it "did not ever authorize, initiate, make, place, or direct the making of any telephone calls or text messages" to Black. (*See* doc. 12, pp. 14–15).

After responding to USHG's motion (doc. 19), Black moved for leave to conduct jurisdictional discovery (doc. 18). The court granted Black's motion, permitted her to propound six interrogatories on USHG "regarding its contacts and activities in Alabama," and ordered additional briefing once the discovery period ended. (Doc. 25). Black propounded her interrogatories, and USHG's motion is now fully briefed.

## LEGAL STANDARD

To survive a Rule 12(b)(2) motion to dismiss, "the plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (footnote omitted)). A prima facie case of personal jurisdiction "is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)). "If the defendant submits affidavit evidence contesting the basis for personal jurisdiction, 'the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction.'" *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1315 (11th Cir. 2025) (quoting *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023)).

"To the extent that 'the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). "Whether the plaintiff satisfies the prima facie standard is a purely legal question; the district court does not weigh evidence or make credibility determinations." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1365–66 (11th Cir. 2021). But the court need only consider the "portions of an affidavit that set forth specific factual declarations within the affiant's personal knowledge." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

## DISCUSSION

### A. Governing Law on Personal Jurisdiction

"[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant. First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) (citations omitted). Fortunately, these inquiries merge here because Alabama's long-arm statue grants jurisdiction over nonresidents to the fullest extent allowed by the Due Process Clause. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *see also* Ala. R. Civ. P. 4.2. So the question is whether exercising personal jurisdiction over USHG would violate the Due Process Clause.

"At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has a fair warning that it may be subject to suit there." *Del Valle*, 56 F.4th at 1275 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)). A nonresident defendant's contacts with a state can be evaluated one of two ways: "(1) the plaintiff

can show that the defendant has continual and systematic contact with the State (*i.e.*, 'general jurisdiction'), or (2) the plaintiff can establish a substantial connection between the conduct at issue and the state where the lawsuit was filed (*i.e.,* 'specific jurisdiction')." *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1156 (N.D. Ala. 2020). The parties (and court) agree that general jurisdiction is lacking because USHG does not conduct continual and systematic business in Alabama such that it's at home in the State. So Black must plead facts showing the requirements for specific jurisdiction are satisfied.

When looking for specific jurisdiction, courts examine "whether (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275. Black bears the burden of establishing the first two requirements. *See SkyHop Techs.,* 58 F.4th at 1229. If she carries it, USHG must then "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

## B. Application to Black's Claims

Black points out four reasons why the court should exercise personal jurisdiction over USHG: (i) she "identified" the insurance agents that called and texted her as USHG agents; (ii) USHG reached prior confidential settlements with Black; (iii) USHG and Black attempted to negotiate a settlement in this case; (iv) USHA's contacts should be imputed to USHG. But, as explained below, all those reasons fail to establish personal jurisdiction.

1. <u>Insurance Agents</u>. Black alleges in her complaint that USHG engaged in activity within Alabama by "initiat[ing], or caus[ing] to be initiated, unsolicited telemarketing solicitations" to Black. (*See* doc. 1, pp. 8, 10). But USHG's chief financial officer, Jacobs, rebutted Black's

allegations in his affidavit. (*See* doc. 12, p. 14). Jacobs declared that, because USHG is an insurance holding company, it "has never hired, contracted with, or authorized anyone to make telemarketing calls or text messages, whether in Alabama or anywhere else." (Doc. 12, p. 15). Because Jacobs' affidavit contradicted Black's claims, the burden shifted back to her to present evidence supporting personal jurisdiction. *Jekyll Island-State Park Auth.*, 140 F.4th at 1315.

So Black responded with her own affidavit. Black asserted that she "identified each of the agents" that called her "as agents for USHealth Group from publicly available insurance information and an analysis of the phone calls." (Doc. 17, p. 2).

But that's a "conclusory assertion" insufficient to satisfy Black's burden. *Posner*, 178 F.3d at 1215 (cleaned up).[3] The court need only consider the "portions of an affidavit that set forth specific factual declarations." *Id.* The court need not accept "conclusory, unsupported statements contained in accompanying affidavits," like Black's statement here. *Mewbourne v. Cheytac, USA, LLC*, 2013 WL 1346569, at *11 (N.D. Ala. March 29, 2013) (quoting *Melech v. Life Ins. Co. of N. Am.*, WL 1047716, *3 (S.D. Ala. Mar. 1, 2011)), report and recommendation adopted, 2011 WL 995821 (S.D. Ala. Mar. 18, 2011). It's not a "specific factual declaration" for Black to say that her "analysis of the phone calls" revealed that the insurance advisors calling her were USHG agents. *Posner*, 178 F.3d at 1215 (cleaned up); *see also Mega Millions Music, LLC v. Smith*, 2025 WL 3114464, at *7 (N.D. Ga. Sep. 8, 2025) (disregarding portions of an affidavit "premised on the personal online 'research' of" the affiant).

Black presented only one fact supporting her conclusion that the agents calling her were USHG agents. And that fact points to a conclusion *opposite* of Black's. Black submitted the LinkedIn profile of Angela Provost, one of the six individuals that called her. (*See* doc. 17, p. 3). But

[3] The *Posner* court discussed conclusory assertions that were insufficient to shift the *defendant's* burden back to the plaintiff. 178 F.3d at 1215. But it seems that the *Posner* rule applies generally to the party carrying the burden, not necessarily to defendants only. *See Mewbourne v. Cheytac, USA, LLC*, 2013 WL 1346569, at *11 (N.D. Ala. March 29, 2013) (applying the *Posner* rule to the plaintiff).

Provost's profile identifies her as a "Licensed Health Insurance Advisor with *USHealth Advisors*," not as an agent for USHG as Black claims. (*Id.*) (emphasis added). As a result, Black's conclusory assertion in her affidavit regarding the insurance agents fails to satisfy her burden to produce evidence supporting personal jurisdiction. *Jekyll Island-State Park Auth.*, 140 F.4th at 1315.

2. Prior case settlements. Black also reasons that USHG has minimum contacts with Alabama because she has confidentially settled two previous cases with USHG in "fact situations virtually identical to the current case." (Doc. 28, p. 1–2). But that's not enough information for the court to determine whether USHG has sufficient contacts with Alabama in this case. There is nothing for the court to evaluate other than the existence of the confidential settlements. So those settlements cannot establish personal jurisdiction.

3. Settlement negotiations in this case. Black next relies on email settlement negotiations that led up to this case. Black negotiated via email with USHG in-house counsel, Erica Gibbs. (Doc. 28, p. 2). She argues that the negotiations established USHG's contacts in Alabama. (*See* doc. 28, p. 5). Not so.

The settlement negotiations cannot satisfy the relatedness prong of specific personal jurisdiction. The relatedness prong requires the court to ask a simple question: "whether there is 'a strong relationship among the defendant, the forum, and the litigation.'" *SkyHop Techs.*, 58 F.4th at 1229 (quoting *Ford Motor*, 592 U.S. at 365). "The principal way to establish this relationship is through an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Ford Motor*, 592 U.S. at 359–60).

The settlement negotiations do not establish a "strong relationship" between USHG, Alabama, and Black's claims. *Id.* Communications making legal demands—like Black's emails to Gibbs—normally satisfy the relatedness prong because they "serve[] as the basis for" the claim itself. *Id.* For example, in *Frida Kahlo Corp. v. Pinedo*, 172 F.4th 1316, 1323 (11th Cir. 2026), the defendants "sent cease-and-desist letters into

[the forum state] that threatened litigation based on allegedly false assertions of trademark ownership." Those cease-and-desist letters "triggered Plaintiffs' claim of tortious interference" because the defendants sent the letters to the plaintiffs' licensees. *Id.* at 1324. In other words, the defendants' conduct in the forum state was the "'very same conduct' that serve[d] as the basis for Plaintiffs' claims." *Id.* (quoting *SkyHop Techs.* 58 F.4th at 1229).

That's not what happened here. Here, USHG's email settlement negotiations do not serve as the basis for Black's claims—the phone calls and texts do. (*See* doc. 1, p. 3). In other words, the phone calls/texts and the settlement negotiations are different activities; Black showed only that USHG engaged in the latter yet based her claims on the former. So the settlement negotiations fail to satisfy the relatedness prong of the specific jurisdiction analysis.

4. <u>Imputed Contacts</u>. Black lastly argues that USHA's Alabama contacts should be imputed to USHG. (*See* doc. 28, pp. 4, 8–9). But Black does not allege facts sufficient to impute USHA's contacts to USHG.

Start with the general rule for parent and subsidiary companies: "as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (abrogated on other grounds) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925)). USHA and USHG are distinct corporate entities (doc. 21, p. 6), so USHA's contacts cannot automatically be attributed to USHG. *See id.*

Now turn to the exception: "where apparent forum contacts of one actor are really the forum contacts of another, it is consistent with due process to impute those contacts for personal jurisdiction purposes." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021). In other words, "when a defendant exerts a high degree of control over an entity, the contacts created by the entity are, in reality, created by the defendant." *Id.* And two theories can show that high degree of control: the alter ego theory and the agency theory. *See Marti v.*

*Iberostar Hoteles y Apartamentos S.L.*, 2025 WL 253991, at *5 (S.D. Fla. Jan. 21, 2025).

The alter ego or "jurisdictional veil piercing" theory focuses on piercing the corporate veil. *See Bibby*, 987 F.3d at 1355. The key issue is whether an entity's "separate corporate status is formal only and without any semblance of individual identity." *Meier*, 288 F.3d at 1272 (quoting Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1069.4 (3d ed. 2002)). "[T]here is no litmus test for determining whether a subsidiary is the alter ego of its parent. Instead, we must look to the totality of the circumstances. Resolution of the *alter ego* issue is heavily-fact specific and, as such, is peculiarly within the province of the trial court." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1312 (11th Cir. 2022) (abrogated on other grounds) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel Co.,* 855 F.2d 1499, 1506 (11th Cir. 1988)).

But in the parent-subsidiary context, a clear rule emerges: the alter ego theory cannot succeed if based solely on the fact that a parent company "performs some coordinating functions for its subsidiaries," like the coordination of "legal affairs." *Rodriguez v. Imperial Brands, PLC*, 182 F.4th 1333, 1349 (11th Cir. 2026).

Yet Black bases her alter-ego argument solely on USHG's coordinating functions: USHG's in-house counsel attempted to negotiate a settlement for calls made by USHA insurance advisors. (*See* doc. 28, p. 4). But USHG can coordinate legal affairs for USHA without being its alter ego. *See Rodriguez*, 182 F.4th at 1349. And Black produced no other evidence suggesting that USHA's "separate corporate status is formal only." *Meier*, 288 F.3d at 1272 (quoting Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1069.4 (3d ed. 2002)). As a result, Black's alter ego theory fails.

Black's agency argument fares no better. A subsidiary's contacts may be imputed to the parent "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction." *Id.* (quoting Charles Alan Wright & Arthur R. Miller, Fed.

Practice & Proc. § 1069.4 (3d ed. 2002)).[4] For example, plaintiffs have succeeded on the agency theory by showing that a subsidiary "acted as an advertising and booking department for" the parent corporation. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1362 (11th Cir. 2006).

Black does not allege facts like that here. When a defendant authorizes an agent to "send[] a message into the forum state," Black argues, the defendant is subject to personal jurisdiction there. (Doc. 28, p. 9). While that could be true, Black would need to produce evidence that USHG indeed authorizes or directs USHA insurance advisors to make the type of calls and texts placed at issue here. *See Storey v. James Hardie Bldg. Indus., P.L.C.*, 2023 WL 6366568, at *5 (M.D. Ala. Sep. 28, 2023). And she has not done so. Black cannot just assume that USHA is USHG's agent because of the parent-subsidiary relationship. A subsidiary "may be an agent for some business purposes and not others." *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) (quoting 2A C. J. S., Agency § 43, p. 367 (2013)). So Black's agency theory fails too.

## CONCLUSION

For those reasons, the court lacks personal jurisdiction over USHG. The court **GRANTS** USHG's motion to dismiss (doc. 12) and **DISMISSES** Black's claims against USHG. The court will enter a separate order consistent with this opinion that directs the Clerk of Court to terminate USHG as a party to this case.

**DONE** and **ORDERED** on September 21, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

[4] *Meier* applied the agency theory in the general personal jurisdiction context. 288 F.3d at 1275. The Supreme Court later expressed some doubts about using agency to establish general jurisdiction but clarified that "agency may be relevant to *specific* personal jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). For that reason, the Eleventh Circuit's pre-*Daimler* agency cases should still apply to the specific personal jurisdiction analysis.